2008 WY 14

**Karen CRAYK, f/k/a Karen Glover, Appellant (Defendant),**

v.

**Carl GLOVER, Appellee (Plaintiff).**

No. S–07–0094.

Supreme Court of Wyoming.

Feb. 8, 2008.

Representing Appellant: John J. Metzke, Hirst & Applegate, P.C., Cheyenne, Wyoming.

Representing Appellee: Donald A. Cole, Cole & Cole, Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1]   Karen Crayk, formerly Karen Glover, seeks review of a district court order amending her original decree of divorce. We reverse.

## ISSUE

[¶ 2]   Ms. Crayk presents the following issue:

> Did the trial court err by entering an amended decree of divorce on remand which stated the award of military retired pay as both a percentage of disposable military retired pay and as a fixed dollar amount and which was not consistent with the holding of the Wyoming Supreme Court?

Mr. Glover states the issue as follows:

> Did the district court err by entering an amended decree of divorce on remand which explained the award of military retired pay and awarded the ex-spouse a portion of the military retired pay as a fixed dollar amount?

## FACTS

[¶ 3]   Ms. Crayk and Mr. Glover were married in 1979 in Louisiana, and divorced on February 10, 1997 in Wyoming. During that time, Mr. Glover served 17 years in the United States military. The original divorce decree awarded Ms. Crayk "one-half (1/2) of the sum that accrued in [Mr. Glover]'s retirement fund during the first seventeen years of [Mr. Glover]'s military career."

[¶4]   In 2003, Ms. Crayk filed a *Motion to Amend and/or Modify Decree of Divorce.*  In her motion, Ms. Crayk requested that the divorce decree's retirement pay provision be modified to meet the definition of "court order" found in the Uniformed Services Former Spouse Protection Act (USFSPA), 10 U.S.C. § 1408 (2002).   The district court granted the motion and entered an order amending the original decree.   In the amended decree, the district court awarded Ms. Crayk:

> 33.59621% of the Plaintiff Carl Glover's disposable military retired pay, to be computed by multiplying 50% times a fraction, the numerator of which is two hundred thirteen (213), representing the number of months the parties were married during the Plaintiff Carl Glover's creditable military service and the denominator of which is three hundred seventeen (317), representing Plaintiff Carl Glover's total months of creditable military service.

[¶5]   Mr. Glover appealed, contending that the amended decree improperly awarded Ms. Crayk a portion of Mr. Glover's longevity and promotion pay increases that accrued after the divorce.   Mr. Glover claimed that the language of the original divorce decree did not support the formula adopted by the district court.   We agreed and reversed because the amended decree improperly modified the original decree.   In essence, it awarded Ms. Crayk retirement benefits that she had not been awarded in the original decree.   The original decree awarded Ms. Crayk fifty percent of the retirement pay that had accrued during the first 17 years of Mr. Glover's military service.   In contrast, the amended decree allowed Ms. Crayk to benefit from promotions and longevity pay increases Mr. Glover received after the divorce. *Glover v. Crayk,* 2005 WY 143, ¶ 13, 122 P.3d 955, 958 (Wyo.2005).   We remanded to the district court for further proceedings.

[¶6]   On remand, over Ms. Crayk's objection, the district court entered an amended decree containing the following provision:

> [T]he Decree of Divorce ... is hereby amended ... to specifically provide that [Ms. Crayk] is awarded 20.987% of the disposable military retirement pay [that Mr. Glover] would have received had [Mr. Glover] retired on 10 Feb 1997 with a retirement pay base of $2,639.70 with 20 years and 1 month of [creditable] service. This is based upon 213 months of marriage and 242 months of creditable service. Based on this formula, [Ms. Crayk] will receive a fixed monthly payment of $554.00.[1]

This time, Ms. Crayk has appealed.

## DISCUSSION

[¶7]   It is undisputed that the amended decree was intended to comply with the requirements of the USFSPA.   The USFSPA definition of "court order" requires that the order, "specifically provide[ ] for the payment of an amount, expressed in dollars *or* as a percentage of disposable retired pay, from the disposable retired pay of a member to the spouse or former spouse of that member."   10 U.S.C. § 1408(a)(2)(C) (emphasis added).   Ms. Crayk contends that the order does not comply with the requirements of the USFSPA because it defines the retirement benefit as both a percentage and a fixed dollar amount.   Mr. Glover contends that the district court's order contains no conflict and that the court intended to award a fixed dollar sum.   He maintains that the formula was provided merely to demonstrate how the district court calculated the fixed amount.

[¶8]   The order in this case contains two relevant provisions.   The first is that "[Ms. Crayk] is awarded 20.987% of the disposable military retirement pay [that Mr. Glover] would have received had [Mr. Glover] retired on 10 Feb 1997 with a retirement pay base of $2,639.70 with 20 years and 1 month of [creditable] service."   This language, read in isolation, appears to award Ms. Crayk a percentage of Mr. Glover's military retirement.   The language tracks model language publish-

---

**1.**   We note that 242 months actually converts to 20 years and 2 months, rather than 20 years and 1 month.

ed by the Defense Finance and Accounting Service (DFAS)[2]:

> The former spouse is awarded ___% of the disposable military retired pay the member would have received had the member retired with a retired pay base of ___ and with ___ years of creditable service on ___.

Defense Finance and Accounting Service, *Uniformed Services Former Spouses' Protection Act: Dividing Military Retired Pay*, 11 (rev.8/7/2007), *available at* http://www.dfas.mil/garnishment/retiredmilitary.html.[3] DFAS describes this type of award as a "hypothetical award." Hypothetical awards provide the spouse a percentage of the retired pay to which the spouse would have been entitled had the member retired on a particular date. Importantly, a hypothetical award allows the spouse to receive Cost of Living Adjustments (COLAs). *Id.* at 10.

[¶ 9] The district court, however, also employed the following language: "Based on this formula, [Ms. Crayk] will receive a fixed monthly payment of $554.00." This language appears to award Ms. Crayk a fixed monthly payment "expressed in dollars." The distinction between a "percentage" retirement award and a "fixed" monthly payment award is significant. According to DFAS, "[i]f a fixed dollar amount award is used, the former spouse would not be entitled to any of the member's retired pay cost of living adjustments." *Id.* at 6. The amended decree therefore contains two conflicting provisions: the first provides for a percentage award that would result in COLAs for Ms. Crayk, and the second, "fixed dollar" provision does not. We are unable to reconcile the two provisions or to determine the intent of the district court from the challenged language of the amended decree.

[¶ 10] The original 1997 divorce decree does not specifically address the COLA issue and the district court must make a determi-

nation as to which approach, "percentage" or "fixed dollar," was intended by the original decree. The amended decree is also at odds with the USFSPA, which requires that the award be expressed as either a percentage or a fixed dollar amount. 10 U.S.C. § 1408(a)(2)(C). This award does both, creating an ambiguity. The amended decree fails to accomplish the intended goal of creating a USFSPA-compliant order.

[¶ 11] Reversed and remanded for further proceedings consistent with this opinion.

---

2. DFAS is the federal agency responsible for disbursing retirement payments to members of the military. Additionally, it is responsible for directing eligible payments to spouses pursuant to the USFSPA. Accordingly, DFAS procedures are particularly relevant when interpreting award language intended to result in direct payments to spouses.

3. We published a prior version of this document as an appendix to our opinion in *Kelly v. Kelly*, 2003 WY 133, App. I, 78 P.3d 220, 224–31 (Wyo. 2003).