18398

Cecial Aubrey GASQUE, Appellant, v. Claire Marie Horrigan
GASQUE, Respondent
(143 S. E. (2d) 811)

424

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Appellant,*

*C. C. McDonald, Esq.,* of Florence, *for Respondent for Purpose of Special Appearance and Motion only,*

426

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Appellant,*

September 1, 1965.

Lewis, Justice.

This action for divorce, brought by the husband against the wife in the Civil Court of Florence County, was dismissed by the lower court on motion of the wife upon the ground that the husband had not resided in this State for at least one year prior to the commencement of the action as required by Section 20-103 of the 1962 Code of Laws. The sole question presented in this appeal is whether the lower court erred in so holding.

Section 20-103 is as follows:

"In order to institute an action for divorce from the bonds of matrimony the plaintiff must have resided in this State at least one year prior to the commencement of the action or, if the plaintiff is a nonresident, the defendant must have so resided in this State for such period."

The term "reside" as used in the foregoing statute is equivalent in substance to "domicile". 27A C. J. S. Divorce § 71(b); 17 Am. Jur., Divorce and Separation, Section 281. See: *Phillips v. South Carolina Tax Commission,* 195 S. C. 472, 12 S. E. (2d) 13.

And "[t]he term 'domicile' means the place where a person has his true, fixed and permanent home and principal establishment, to which he has, whenever he is absent, an intention of returning. The true basis and foundation of domicile is the intention, the *quo animo,* of residence. *Bradley v. Lowry,* Speers Eq. 1, 39 Am. Dec. 142." *Phillips v. South Carolina Tax Commission, supra.*

The husband, a native of South Carolina, was employed by the United States Government in Washington, D. C., for approximately fourteen years, and for most of this time lived with his family in the District of Columbia or its environs. His right to maintain this divorce action depends upon whether he relinquished his domicile in South Carolina while living outside of the State in connection with his Federal employment. The husband contends that his absence from the State was solely because of his employment and that he never had any intention of abandoning his domicile therein.

The question of domicile is largely one of intent to be determined under the facts and circumstances of each case. And it is generally held that temporary absence from one's domiciliary state solely because of government work or employment does not effect a change of domicile within the meaning of the divorce laws, in the absence of clear proof of an intent to abandon the old domicile and acquire a new one. 17 Am. Jur., Divorce and Separation, Section 290; 28 C. J. S. Domicile § 12g(5); *District of Columbia v. Murphy,* 314 U. S. 441, 62 S. Ct. 303, 86 L. Ed. 329; *Sweeney v. District of Columbia,* 72 App. D. C. 30, 113 F. (2d) 25, 129 A. L. R. 1370, *Richardson v. Richardson,* 258 Ala. 423, 63 So. (2d) 364; *Rhodes v. Rhodes,* 80 Cal. App. (2d) 723, 182 P. (2d) 275; *Wilburn v. Wilburn,* 260 N. C. 208, 132 S. E. (2d) 332.

The husband was born in Marion County, South Carolina, on September 20, 1920. He graduated from high school in that County in 1939 and attended the University of South Carolina in 1941 and 1942. He and the defendant were married on July 12, 1950 at Florence, South Carolina. Shortly after his marriage he obtained employment with the United States Government in Washington, D. C. and thereafter lived in or near Washington with his family until his return to this State in 1964. A home was purchased in Washington in 1955 where he maintained a place for his family to live. After their marital difficulties began a house

was purchased in 1963 nearby, in Maryland, where the family lived for approximately six months.

Although living with his family in Washington, the record shows that the husband steadfastly maintained at all times that his legal residence was in the State of South Carolina where he was born, reared, and continuously resided until his acceptance of government employment. He testified that he has lived outside of the State of South Carolina solely because of the requirements of his work for the United States Government, first as General Counsel of the United States Senate and subsequently as Assistant Director of the Administrative Office of the United States Courts, the latter including that of General Counsel to the Judicial Conference of the United States. He further testified that he has always considered himself a resident of South Carolina and has never intended to become a resident of any other State. This is substantiated by documentary evidence showing repeated and consistent declarations as to his residence in South Carolina, made in connection with various matters while living in Washington, all prior to his recent marital controversies. He was admitted to the Bar of the State of South Carolina in 1953 and subsquently, in 1958, to practice before the Supreme Court of the United States, both upon affidavits that he was a legal resident of Marion, South Carolina.

There was introduced in evidence various legal proceedings involving their marital difficulties, instituted by the wife in Massachusetts and Maryland, but none of these contain any evidence to rebut the claim by the husband of South Carolina as his legal residence or domicile.

The evidence in this case clearly shows that South Carolina was the domicile of origin of the husband and that he never intended to abandon it while temporarily serving in the employ of the United States Government in Washington, D. C. In fact, there is no evidence to the contrary.

The lower court held two hearings in this matter, one on December 30, 1964 and the other on February 22, 1965. This action was dismissed by an order issued after the December hearing. The second hearing was held on motion of the husband to reopen the matter for the taking of additional testimony. Considerable additional testimony on the part of the husband was taken at the second hearing but rejected by the lower court as not meeting the requirements of the after-discovered evidence rule. While the appeal also involves the charge that the court erred in refusing to consider the testimony offered at the final hearing, we have considered it unnecessary to decide this phase of the matter. Our consideration of the appeal has been confined to the testimony taken at the December hearing, about which there is no question. The testimony presented at that hearing conclusively sustained the jurisdictional requirement of residence on the part of the husband and the lower court should have so held.

Reversed and remanded.

TAYLOR, C. J., and MOSS, BUSSEY and BRAILSFORD, JJ., concur.