719 S.E.2d 275

**Scott G. ROESLER, Respondent,**

v.

**Sara A. ROESLER, Appellant.**

**No. 4906.**

Court of Appeals of South Carolina.

Heard June 7, 2011.

Decided Nov. 9, 2011.

Rehearing Denied Dec. 19, 2011.

102

J. Falkner Wilkes, of Greenville, for Appellant.

Joseph M. Ramseur, Jr., of Greenville, for Respondent.

LOCKEMY, J.

In this action for divorce, Sara A. Roesler (Wife) argues the family court erred in finding it had jurisdiction over her marriage to Scott G. Roesler (Husband), proceeding with trial when she was not represented by an attorney, failing to make an inquiry or award of alimony, and waiving mandatory mediation. We affirm in part, reverse in part, and remand.

## FACTS

Husband and Wife were married on March 26, 1994, and one child (Child) was born as a result of the marriage. At the beginning of the marriage, Husband was employed by the United States Army and the couple lived in Fort Knox, Kentucky, with Wife's two children from a previous marriage.[1] In 1996, Husband voluntarily separated from the Army, and the family moved to Dallas, Texas, where husband remained employed for the next seven years. In 2003, Husband's Texas Army National Guard unit was deployed to Iraq for a year. In 2004, Husband resumed his previous employment, but left shortly thereafter to accept a position with Kellogg, Brown, and Root (KBR), a civilian contractor that provided logistical support to the military in Iraq. Husband worked for KBR in Iraq for approximately a year-and-a-half earning between $15,000 and $17,000 per month. After returning from Iraq, Husband remained employed with KBR earning approximately one-third of what he earned while in Iraq.

Four months later, Husband's employment with KBR was terminated. Husband explained Wife's unhappiness with him

---

1. Wife did not work outside the home during the parties' marriage.

working in Iraq and Child's struggles with school caused him to miss a substantial amount of work. Afterwards, Husband worked for a short time as an insurance salesman, but was soon hired by Fluor Corporation in Greenville, South Carolina. Fluor Corporation also provides the military with logistical support in Iraq. On September 24, 2007, Husband and Child moved into an extended stay hotel in Greenville, South Carolina, provided by Fluor. Husband's parents, who lived in Bluffton, South Carolina, temporarily relocated to Greenville to help Husband homeschool Child. Husband explained that Wife was unhappy with this arrangement and moved into the extended stay hotel with Husband and Child during the first week of October 2007.

In October 2007, the family returned to Texas to pack up their household goods. According to Husband, Wife was upset about leaving "anything behind in the house." Wife insisted the pool slide, pool heater, light fixtures, door handles, two French doors, and built-in cabinets be packed.[2] Husband explained the house was in or about to enter foreclosure and "the expectation was ... we were not going to be able to afford to stay in that house anyhow." As part of a corporate relocation program, Fluor paid a moving company to move the family's household goods from Texas to South Carolina and store the goods in South Carolina.

In November, Wife visited her foster parents in Pennsylvania for Thanksgiving and returned to Greenville after the holiday. During this period, Husband and Wife looked for more permanent housing. The couple looked at a house for rent in Cowpens, South Carolina, and also looked at a house for sale in Greer, South Carolina.

Shortly thereafter, a dispute arose between Husband and Wife over money and whether they were able to afford the Greer house. Wife began hitting and slapping Husband. Husband left the hotel and Wife followed. As Husband attempted to leave the parking lot in his car, Wife used her car to push Husband's car approximately six feet onto the curb to prevent him from leaving. Wife exited her vehicle and

---

2. The pool slide, approximately ten feet tall, had to be unbolted from its footing. The pool heater is approximately six feet by eight feet and four feet tall.

began tossing items from Husband's trunk. Afterwards, Husband and Wife talked for approximately thirty minutes before Wife began hitting Husband. Husband attempted to leave a second time; however, Wife jumped onto the hood of his car and forcibly removed a windshield wiper blade which she used to strike Husband several times. Thereafter, Husband requested the hotel's front desk staff call the police. Wife was arrested, and Husband bailed Wife out of jail the next morning.

Husband and Wife attempted to reconcile, and the family went bowling on New Year's Eve 2007. Upon returning home, Husband and Wife became involved in an argument in front of Child. Wife attempted to hit Husband's head against the wall. Husband explained Wife did not attempt to "physically damage" his head, but was "very, very physical—demonstrative of making a point." The argument dissipated, and although Husband considered leaving Wife, he remained in the home because of Child. However, shortly thereafter another argument occurred and Husband left the home.

Husband initiated this action for divorce on grounds of physical cruelty on January 17, 2008. Wife was served in Greenville on January 28, 2008. However, Wife failed to answer and thereafter the family court waived mediation because Wife's whereabouts were unknown and she was in default. Wife failed to appear at the preliminary hearing held on February 28, 2008. The family court found jurisdiction in South Carolina was proper because Husband and Wife resided in South Carolina more than three months prior to Husband's filing of this action, which satisfied the requirements of section 20–3–30 of the South Carolina Code (Supp.2010). The family court awarded Wife temporary custody of Child with visitation, and ordered Husband to pay Wife $1,700 per month in unallocated family support. Husband was also ordered to pay rent for Wife on a house in Simpsonville, South Carolina, make Wife's car payment, and maintain insurance for Wife and Child.

Prior to the final hearing, Wife moved to dismiss the action arguing the family court lacked jurisdiction to adjudicate the divorce because she was a resident of Texas at the time she was served. After hearing evidence on the issue, the family

court denied Wife's motion to dismiss, finding it had personal jurisdiction and subject matter jurisdiction to adjudicate the divorce. The family court's final order granted Husband a divorce on the grounds of physical cruelty, awarded Wife custody of Child, allowed Husband two weeks visitation per year, ordered Husband to pay $4,000 per month in child support, and equitably divided the parties' marital property. No alimony was awarded. This appeal followed.

## STANDARD OF REVIEW

"In appeals from the family court, this Court reviews factual and legal issues de novo." *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). Accordingly, this court has the authority to find facts in accordance with its own view of the preponderance of the evidence. *Lewis v. Lewis*, 392 S.C. 381, 391–92, 709 S.E.2d 650, 655 (2011). However, we recognize that the family court is in a superior position to determine the credibility of the witnesses and the weight of the evidence. *See id.* at 392, 709 S.E.2d at 655. The appellant has the burden to demonstrate the family court's findings are against the preponderance of the evidence. *Id.*

## LAW/ANALYSIS

### I. Jurisdiction

Wife argues the family court erred in finding it had personal jurisdiction over her. Wife maintains her appearance at the final hearing constituted a limited appearance to contest jurisdiction. Wife also argues the family court lacked subject matter jurisdiction to adjudicate the divorce because both she and Husband never intended to reside in South Carolina. We disagree.

The family court has exclusive jurisdiction to hear and determine actions for divorce. S.C.Code Ann. § 63–3–530(A)(2) (2010). Before the family court can exercise subject matter jurisdiction over a marriage and grant a divorce, the plaintiff or defendant must have been a domiciliary of South Carolina. *See* S.C.Code Ann. § 20–3–30 (Supp.2010). Section 20–3–30 provides:

In order to institute an action for divorce from the bonds of matrimony the plaintiff must have resided in this State at least one year prior to the commencement of the action or, if the plaintiff is a nonresident, the defendant must have so resided in this State for this period; provided, that when both parties are residents of the State when the action is commenced, the plaintiff must have resided in this State only three months prior to commencement of the action. . . .

The term "reside" as used in this section is "equivalent in substance to 'domicile.'" *Gasque v. Gasque,* 246 S.C. 423, 426, 143 S.E.2d 811, 812 (1965). Domicile "means the place where a person has his true, fixed and permanent home and principal establishment, to which he has, whenever he is absent, an intention of returning." *Id.* "The true basis and foundation of domicile is the intention, the *quo animo,* of residence." *Id.*

█ Initially, Wife was personally served with the summons and complaint in this action in Greenville, South Carolina. Accordingly, the family court properly determined it had personal jurisdiction over Wife. *See Whaley v. CSX Transp., Inc.,* 362 S.C. 456, 474, 609 S.E.2d 286, 295 (2005) ("Proper service of process on a defendant . . . confers personal jurisdiction over the defendant."). Therefore, the issue before us is whether Husband and Wife intended to reside in South Carolina.

Here, Husband secured employment at Fluor Corporation in Greenville. Husband explained he and Wife agreed that he would move to Greenville first and then Wife and Child would move shortly thereafter. However, the night before Husband was to leave, Wife decided Husband should bring Child and Child's homeschool materials to South Carolina with him. Upon arriving in Greenville, Husband and Child moved into an extended stay hotel provided by Fluor. Husband's parents came to Greenville to help homeschool Child. Wife was unhappy with Husband's parents assisting with Child's homeschooling and moved into the extended stay hotel with Husband and Child in early October 2007.

Later that month, Wife, Husband, and Child returned to Texas to pack the family's household goods and move them to South Carolina. Fluor provided a moving company to move the family's household goods from Texas to South Carolina.

The moving company placed the family's household goods into storage in South Carolina until Husband and Wife secured more permanent housing. Husband and Wife searched for more permanent housing in Cowpens and Greer, South Carolina.

Based on the foregoing, and especially considering Wife sent Child with Husband to South Carolina, moved all her household goods to South Carolina, and proceeded to look for permanent housing in South Carolina, we conclude Husband and Wife moved to South Carolina with the intention of making it their home. In making this determination, we are mindful that the family court specifically found Husband's testimony on this issue was credible. Accordingly, we believe the family court properly determined it had subject matter jurisdiction over the parties' marriage.

## II. Appointment of Counsel

Wife argues the family court erred in proceeding with trial when she had no attorney, could not afford an attorney, and requested an attorney. We disagree.

Generally, a litigant has a statutory right to proceed pro se in South Carolina. *See* S.C Code Ann. § 40–5–80 (2011). A separation proceeding in family court does not involve the deprivation of a liberty interest that mandates a state or federal due process right to an attorney. *Washington v. Washington*, 308 S.C. 549, 551, 419 S.E.2d 779, 780 (1992).

Here, at the beginning of trial, the family court questioned Wife about her self-representation. Wife responded, indicating she felt competent to represent herself, understood the nature of the proceedings, and could not afford to pay $5,000 for an attorney. After questioning Wife, the court proceeded with Wife's motion to dismiss for lack of jurisdiction. During trial, Wife cross-examined Husband, presented evidence, and testified on her own behalf. However, at several points during trial Wife requested a court-appointed attorney. Although the court inquired whether Wife requested a court-appointed attorney before the day of the final hearing, the court did not appoint an attorney.

The family court had no obligation to appoint Wife an attorney in a divorce proceeding where she chose to represent

herself at the outset. *See id.* at 551, 419 S.E.2d at 780 ("A separation proceeding, where one or both of the parties has invoked the State's assistance in determining marital equities, simply does not involve a deprivation that mandates a due process right to an attorney."). Accordingly, we see no error in the family court's decision to continue with trial after Wife requested a court-appointed attorney.

## III. Alimony

██ Wife argues the family court erred in summarily refusing to consider the issue of alimony in response to her oral request at the final hearing. We agree.

██ Section 20-3-120 of the South Carolina Code (1985) provides "[i]n every divorce action from the bonds of matrimony either party may in his or her complaint or answer or by petition pray for the allowance to him or her of alimony and suit money and for the allowance of such alimony and suit money *pendente lite.*" Generally, the family court cannot award alimony unless a plaintiff or defendant participating in a domestic relations action requests it in the complaint or answer. *See Bass v. Bass,* 272 S.C. 177, 180, 249 S.E.2d 905, 906 (1978) ("While it is true that pleadings in the family court must be liberally construed, this rule cannot be stretched so as to permit the judge to award relief not contemplated by the pleadings. Due process requires that a litigant be placed on notice of the issues which the court is to consider.") (footnote omitted).

Conversely, when a defendant fails to answer, the South Carolina Rules of Family Court are unclear. On the one hand, Rule 2, SCRFC, specifies that Rule 55 of the South Carolina Rules of Civil Procedure is not applicable in family court. *See* Rule 2(a), SCRFC ("The following SCRCP, however, shall be inapplicable: ... 55....."). However, Rule 17(b), SCRFC, suggests that at some point, Rule 55, SCRCP, is incorporated into the final order. *See* Rule 17(b), SCRFC ("In domestic relations matters, the provisions of Rule 55, SCRCP, regarding orders of default shall be made in the final order issued by the family court.").

This discrepancy has caused uncertainty in the bar as to handling the issue of default in family court. If Rule 55,

SCRCP, is not applicable, then there is no need for our family court judges and family court practitioners to deal with unnecessary default proceedings and paperwork. If Rule 55, SCRCP, is applicable, then perhaps Rule 2, SCRFC, should be amended to clarify such application and to eliminate any potential conflict. Family court practitioners and judges need guidance on how to proceed when default is involved; however, any amendment to the rules must come from the supreme court.

Notwithstanding, *Stamey v. Stamey* is instructive regarding the issue on appeal. *See* 289 S.C. 507, 347 S.E.2d 112 (Ct.App. 1986). There, although wife was in default prior to the final hearing, the family court ruled on the issues of alimony, support, and counsel fees. *Id.* at 511, 347 S.E.2d at 114–15. Husband appealed. Relying on a prior version of the family court rules which stated "[e]ven though the respondent does not file an answer, he may, with permission of the court, be heard on issues of custody of children, alimony, support and counsel fees," this court found wife's default was immaterial because the family court rules allowed those issues to be raised at the final hearing by a defendant who did not answer. *Id.*

Turning to the instant case, Rule 17(a), SCRFC, vests the family court with discretion to determine whether to allow a non-answering defendant to raise the issue of alimony. Here, Wife requested alimony at the conclusion of the merits hearing; however, the family court denied her request based upon her failure to answer: "Alimony is not before me. There's been no pleading filed by [Wife] for alimony. That issue is not before me." In the subsequent colloquy with Husband's counsel, the court focused on the facts that Wife failed to answer and that Husband's counsel filed an affidavit of default. The record lacks any indication the family court considered whether Wife should be allowed to raise the issue of alimony despite her failure to answer; therefore, we conclude the family court erred in failing to exercise its discretion. *See Fontaine v. Peitz,* 291 S.C. 536, 538, 354 S.E.2d 565, 566 (1987) ("When the trial judge is vested with discretion, but his ruling reveals no discretion was, in fact, exercised, an error of law has occurred."). Although we note the discrepancy regarding the application of Rule 55, SCRCP, in family court,

the result herein would not change because of our application of Rule 17(a), SCRFC. Accordingly, we remand the issue of alimony to the family court with the authority to exercise the same discretion it had at the time of the final hearing. *See Callen v. Callen*, 365 S.C. 618, 627, 620 S.E.2d 59, 64 (2005) (citing *Fontaine* and finding the family court's failure to exercise its discretion to determine whether the testimony of three of wife's witnesses should be excluded because she failed to supplement her interrogatory answers in a timely fashion required a new hearing).

### IV. Mandatory Mediation

■ Wife argues the family court erred in exempting this action from mandatory mediation. Specifically, Wife maintains the family court was not informed of correspondence between Husband's counsel and Wife's Texas counsel "around the same time" he filed the request to exempt this case from mediation. We disagree.

In Greenville County, civil suits and domestic relations actions are subject to a mandatory alternative dispute resolution process. *RE: Circuit Court Arbitration & Mediation & Family Court Mediation*, S.C. Sup.Ct. Order dated June 21, 2006. South Carolina Rule of Alternative Dispute Resolution 3(a) provides:

> All civil actions filed in the circuit court, all cases in which a Notice of Intent to File Suit is filed pursuant to the provisions of S.C.Code § 15–79–125(A), and all contested issues in domestic relations actions filed in family court, except for cases set forth in Rule 3(b) or (c), are subject to court-ordered mediation under these rules unless the parties agree to conduct an arbitration.

However, a party can request a case be exempted from mandatory mediation for "case specific reasons." Rule 5(e), SCRADR. The chief administrative judge is vested with the discretion to grant a motion to exempt for good cause. *Id.*

Here, the chief administrative judge for the Greenville County Family Court exempted this case from mandatory mediation because Wife was in default and her whereabouts were unknown. We find Wife's default and unknown whereabouts constituted good cause for exempting this action from

mandatory mediation. Furthermore, Wife offers no support in the record for her suggestion Husband's counsel knew of her whereabouts at the time he requested the case be exempted from mediation. In fact, Husband's counsel represented the communication with Wife's Texas counsel occurred after he requested the exemption. Accordingly, we find the family court properly exempted this case from mediation.

## CONCLUSION

In sum, we affirm the family court's decision regarding (1) subject matter jurisdiction, (2) appointment of counsel, and (3) exemption from mandatory mediation. However, we reverse the trial court's decision regarding alimony and remand the alimony issue to the family court to exercise all the discretion it had at the time of the final hearing.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

FEW, C.J., and PIEPER, J., concur.