No. 113,103

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE MATTER OF THE MARRIAGE OF

JOANN WILLIAMS,
*Appellee*,

v.

ALFONZA WILLIAMS,
*Appellant*.

SYLLABUS BY THE COURT

1.

The Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1408(c) (2012), authorizes state courts to divide military retirement benefits subject to the following requirements: (1) a state must provide for subject matter jurisdiction over the division of military retirement as property of the member and his or her spouse, and (2) the state court must have personal jurisdiction over the service member by reason of residence, domicile, or consent, rather than broader personal jurisdictional standards encompassed in state long-arm jurisdiction.

2.

K.S.A. 23-201(b) provides subject matter jurisdiction to Kansas courts for the purpose of the division of a service member's military retirement, satisfying the requirement of 10 U.S.C. § 1408(c)(1).

3.

The phrase "consent to the jurisdiction of the court" in 10 U.S.C. § 1408(c)(4) refers to personal jurisdiction, not to subject matter jurisdiction.

4.

The failure of a party to object to personal jurisdiction in a proceeding before the issue of the division of military retirement is raised does not constitute "consent to the jurisdiction of the court" under 10 U.S.C. § 1408(c)(4)(C).

5.

The failure of a party to object to personal jurisdiction in a proceeding at the time when the issue of the division of military retirement is first raised constitutes "consent to the jurisdiction of the court" under 10 U.S.C. § 1408(c)(4)(C).

Appeal from Shawnee District Court; C. WILLIAM OSSMANN, judge. Opinion filed February 19, 2016. Affirmed.

*Michael E. Riling*, of Riling, Burkhead, & Nitcher, Chtd., of Lawrence, for appellant.

*Jeffrey Leiker*, of Leiker Law Office, P.A., of Kansas City, for appellee.

Before MCANANY, P.J., POWELL, J., and DAVID J. KING, District Judge, assigned.

KING, J.:  This case involves a challenge to the district court's jurisdiction to divide military retirement benefits pursuant to the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1408 (2012).

In 1994 the Shawnee District Court granted Joann and Alfonza Williams a divorce. Nineteen years later Joann sought to enforce a provision of the divorce decree that awarded her 25 percent of Alfonza's Army retirement benefits. Alfonza argued that

the district court lacked jurisdiction to divide his military retirement benefits because he did not "consent" to the district court's jurisdiction over his Army retirement benefits pursuant to 10 U.S.C. § 1408(c)(4)(C). The district court held it had jurisdiction in 1994 to divide Alfonza's military retirement benefits and awarded Joann's request for an award of attorney fees pursuant to K.S.A. 2015 Supp. 23-2715. Alfonza timely appeals both of these decisions. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Joann filed a petition for divorce from Alfonza with the Shawnee District Court on October 8, 1993. Her prayer for relief requested an absolute divorce, child custody and support, spousal maintenance, and an equitable division of personal property and debts. Her petition did not specifically request a division of Alfonza's Army retirement or otherwise refer to it.

Alfonza filed a pro se answer on November 29, 1993. In his answer, Alfonza admitted to all the allegations of the petition except the allegation that the parties owned personal property. He requested the court to order joint custody of the parties' two children, that Joann pay her own outstanding financial obligations, and that Joann's request for maintenance be denied. Alfonza's answer did not refer to his military retirement.

The parties were unable to resolve issues of the marriage, and the matter proceeded to trial on January 31, 1994. At trial, Joann was represented by counsel. Alfonza appeared pro se but had a man identified as "Moseley" with him to assist him. Moseley was a senior NCO from Fort Hood, had 20 years of military experience, and was present in case any question arose that dealt with military concerns. The district court determined that Moseley was a potential witness and requested he sit in the courtroom

gallery and not at counsel table. In the end, Moseley did not further participate in the trial.

As trial began, Joann's counsel identified child support, maintenance, and military retirement as the major issues in the case. He requested the court award Joann a portion of Alfonza's military retirement based on the length of the marriage, the time during which the retirement benefits were earned, and the unequal earning power of Joann. Joann's trial evidence included testimony and evidence regarding her claim for a division of Alfonza's military retirement as marital property. Joann claimed she should receive half of Alfonza's military retirement based on a marriage of 8.5 years out of 15 years of military service.

Alfonza did not state any objection to the inclusion of his military retirement as an issue during the trial. In fact, during his cross-examination of Joann, he asked if they had agreed 24 hours before trial that she would receive 20 percent of his retirement benefit, which she confirmed.

At the conclusion of the trial, the trial judge stated that he needed to look at the federal law governing military retirement benefits before declaring it to be marital property. He also inquired how any division of retirement benefits would be paid.

In the divorce decree filed about 3 weeks after the trial, the district judge found "[t]he Court does have jurisdiction of the parties and subject matter of this action." He made the following findings regarding Alfonza's military retirement benefits:

> "[T]he Court finds that Husband's army retirement benefits are marital property. Because of the duration of the marriage, the relative earning capacity of the parties, and the overall relative financial condition of the parties, Wife is awarded 25% of Husband's army retirement benefits, as her sole and separate property, free and clear of any right, title or interest of Husband. Husband shall act as trustee of Wife's share of such benefits, and

upon Husband's receipt of such benefits, shall immediately pay over Wife's share of such benefits to Wife. The provisions of this section and the percentage of Wife's share shall apply whether Husband takes regular, medical, or early retirement from the military. Husband shall cooperate with Wife in the execution of such documents as may be necessary in order to carry out the provisions of this Decree and in obtaining direct payments from the Army to Wife of her portion of the benefits to the extent allowable by the Army."

Alfonza did not seek modification, nor did he pursue an appeal of the decree of divorce.

Nineteen years later, in 2013, Joann filed a motion for "garnishment" of Alfonza's retirement benefits. She alleged that Alfonza was not willing to give her any of the retirement benefits that the district court had awarded her. Alfonza responded by filing a motion to set aside that portion of the divorce decree that dealt with his military retirement benefits. He claimed for the first time that the district court lacked subject matter jurisdiction to divide his military retirement. Subsequently, he supplemented his response to ask the court, in the event it did not sustain his objection to jurisdiction, to clarify the division of his military retirement benefit since he retired 18 years later than the decree contemplated, and he had received rank and pay increases during this time.

The district court held a hearing to consider the parties' post-decree motions. Joann and her trial attorney from the divorce proceedings testified. Joann testified she discussed her claim for division of Alfonza's military retirement with him before the divorce hearing. She testified that Alfonza told her the night before trial that he would be willing to divide his retirement but he did not believe it was fair to give her 50 percent of it. Joann's divorce trial attorney testified that military retirement was an issue of the divorce and was discussed with Alfonza prior to trial, although he could not remember details of the discussion or exactly when it occurred.

Alfonza did not testify at the hearing. Rather, he relied on argument that the district court did not have jurisdiction to divide his military retirement benefits in 1994. He argued Kansas was not his state of residence or domicile, and he did not consent to the "jurisdiction of the court." Alternatively, Alfonza argued that if the court found he had consented to the jurisdiction of the Kansas district court, the court should "clarify" the order given the division of his retirement benefits was based on spending 15 years in the military as a staff sergeant, rather than 31 years as a sergeant major.

The district court took the matter under advisement. When it issued its written decision in the matter it held:  (1) the district court had jurisdiction in 1994 to divide Alfonza's military retirement, (2) to make the result of the division fair, the division should be recalculated to reflect Alfonza's anticipated retirement date of 1995 and not his actual retirement date of 2013, and (3) that Joann was entitled to recover attorney fees in the amount of $6,092.

JURISDICTION TO DIVIDE MILITARY RETIREMENT BENEFITS

Alfonza argues the district court in 1994 did not have jurisdiction to divide his military retirement. He has argued at various points of the proceedings that the district court lacked subject matter jurisdiction and that the court lacked personal jurisdiction because he did not expressly consent to the court's jurisdiction over his military retirement benefits. He also argues that "if implicit consent is sufficient, the implicit consent must be specific to the issue of military retirement, when the underlying case involves multiple issues."

Alfonza's challenge to the district court's jurisdiction relies on interpretation of provisions of the USFSPA, and, thus, whether the district court had jurisdiction to divide Alfonza's military retirement presents an issue of statutory construction over which we have unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d

469 (2015). Also, whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Frazier v. Goudschaal*, 296 Kan. 730, 743, 295 P.3d 542 (2013).

Before turning to our analysis of § 1408(c) of the USFSPA, a brief review of its genesis is in order. In 1981, the United States Supreme Court held that state courts were preempted from dividing military retirement benefits as marital property in divorce proceedings. *McCarty v. McCarty,* 453 U.S. 210, 232-36, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981). Congress responded to *McCarty* by passing the USFSPA, 10 U.S.C. § 1408. Section 1408(c) is the portion of the Act that applies to this case. It provides in relevant part:

> "(1) . . . [A] court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse *in accordance with the law of the jurisdiction of such court*.
>
> . . . .
>
> "(4) A court may not treat the disposable retired pay of a member in the manner described in paragraph (1) unless the court *has jurisdiction over the member* by reason of (A) his *residence*, other than because of military assignment, in the territorial jurisdiction of the court, (B) his *domicile* in the territorial jurisdiction of the court, or (C) his *consent* to the jurisdiction of the court." (Emphasis added.)

Thus, under the USFSPA state courts may divide military retirement subject to the following requirements: (1) a state must provide for subject matter jurisdiction over the division of military retirement as property of the member and his or her spouse, and (2) the state court must have personal jurisdiction over the service member by reason of residence, domicile, or consent, rather than broader personal jurisdictional standards encompassed in state long-arm jurisdiction.

*Kansas subject matter jurisdiction for division of military retirement benefits*

Although Alfonza's argument on appeal focuses on whether he consented to the court's jurisdiction over his military retirement, we will briefly discuss the state law subject matter jurisdictional requirement of § 1408(c)(1).

In *Grant v. Grant*, 9 Kan. App. 2d 671, 676, 685 P.2d 327 (1984), this court held that military retirement pay had no present determinable value and could not be divided in a Kansas divorce. In response to *Grant,* the Kansas Legislature amended the Kansas Divorce Code in 1987 to provide that the "present value of any vested or unvested military retirement pay" is marital property subject to division in a Kansas divorce proceeding.  See K.S.A. 23-201(b). Accordingly, since 1987 military retirement pay has been subject to division in Kansas divorce proceedings. This satisfies the requirement of § 1408(c)(1).

*What constitutes "consent" under § 1408(c)(4)(C)?*

There is a considerable body of caselaw from our sister states directed toward what constitutes consent under § 1408(c)(4)(C). When the district court made its decision in this case it indicated it had consulted an annotation article titled: Construction and Application of Federal Uniformed Services Former Spouse Protection Act in State Court Divorce Proceedings, 59 A.L.R.6th 433. This annotation is representative of the divergent views other courts have taken on the issue.

Some courts discuss the issue of consent in terms of whether § 1408(c)(4)(C) is a provision dealing with "subject matter jurisdiction" or "personal jurisdiction." Other courts discuss whether § 1408(c)(4)(C) requires "express consent" or if "implied consent" is sufficient.

This court has previously determined that the phrase "consent to the jurisdiction of the court" in § 1408(c)(4)(C) refers to personal jurisdiction, not to subject matter jurisdiction. *Fox v. Fox*, 50 Kan. App. 2d 62, Syl. ¶ 3, 322 P.3d 400 (2014). Thus, Kansas law does not support Alfonza's objection to jurisdiction to the extent it relies on § 1408(c)(4)(C) being interpreted as a provision relating to subject matter jurisdiction.

Alfonza contends that the USFSPA requires "express consent" and he did not expressly consent to the court's jurisdiction by "filing an answer, appearing, and actively participating in the case." Alternatively, he argues that if "implied consent" is sufficient, the consent "must be specific to the issue of military retirement, when the underlying case involves multiple issues."

Joann argues that Alfonza consented to jurisdiction when he appeared and participated in the proceedings without objecting to the district court's jurisdiction over his military retirement.

There is substantial support for each of the party's positions in the caselaw of our sister states. Alfonza relies on essentially two cases to support his contention that § 1408(c)(4)(C) requires "express consent." We will discuss each of these cases in some detail.

*Wagner v. Wagner*, 564 Pa. 448, 768 A.2d 1112 (2001), is a case that comes from the Supreme Court of Pennsylvania. Amy and Michael Wagner were married in Pennsylvania in 1982. Michael was in the military during the entire marriage. In 1992, the couple separated and Amy returned to live in Pennsylvania. Michael was stationed in New Mexico but resided in Alaska.

In December 1993, Amy filed a complaint for support. In June 1994, she filed a complaint in divorce. Michael was personally served in Alabama in September 1995. He

did not file an answer to the complaint in divorce. Michael also did not respond to interrogatories relating to income and expenses.

In February 1996, an attorney entered an appearance for Michael and attended a hearing charging Michael with contempt for failing to answer the interrogatories. Eventually, Michael produced financial records and answered the interrogatories. Michael personally attended a support modification conference in the complaint for support proceeding.

In January 1998, Amy filed an inventory which listed Michael's Air Force retirement as marital property. Michael did not file an inventory. In February 1998, Amy requested bifurcation and a trial of the economic issues of the parties. The court scheduled a bifurcation hearing for May 8, 1998.

On May 4, 1998, Michael filed objections to the Pennsylvania court's jurisdiction. On May 7, 1998, he filed a "Refusal to Accept Jurisdiction of Court to Determine the Disposable Retirement Pay of A Member of the Armed Forces." Michael alleged he was not subject to the court's jurisdiction. He relied on 10 U.S.C. § 1408(c)(4)(A)-(C). He maintained that he did not reside and was not domiciled in Pennsylvania. He also claimed that "he did not consent to the trial court's jurisdiction for purposes of the [USFSPA] and objected to the court's jurisdiction over his retirement pay." 564 Pa. at 453.

On May 14, 1998, the trial court sustained Michael's objection to jurisdiction. It concluded § 1408(c)(4) addresses subject matter jurisdiction. The court reviewed the record to determine whether Michael had consented to its jurisdiction over the retirement pay itself. The court found that no action Michael had taken in the case amounted to such consent.

An appeal was taken to the Superior Court. The Superior Court determined that § 1408(c)(4) addresses personal jurisdiction. It rejected Amy's argument that Michael's objection to jurisdiction was untimely, concluding that the question of consent for purposes of the USFSPA "is not whether the military member waived his right to object to personal jurisdiction under state procedural rules, but whether he engaged in some form of affirmative conduct that showed his express or implied consent to the trial court's general *in personam* jurisdiction." 564 Pa. at 454. The Superior Court found that Michael had consented "to the court's personal jurisdiction through his participation in the divorce proceedings." 564 Pa. at 454. That participation consisted of: accepting service of the Complaint in Divorce, having counsel enter an appearance on Michael's behalf, appearing through counsel at a discovery dispute hearing, complying with the court's discovery order, answering interrogatories, and attending a support modification conference.

An appeal was taken to the Pennsylvania Supreme Court. It concluded: "§ 1408(c)(4) refers to personal jurisdiction. For this, however, Congress chose not to use state law. Instead, it usurped state long-arm statutes and provided in § 1408(c)(4)(A)-(C) its own tests of personal jurisdiction that all state courts must apply." 564 Pa. at 458.

The Pennsylvania Supreme Court proceeded to resolve whether Michael had consented to jurisdiction:

> "Our next inquiry lies at the heart of this case—to what does § 1408(c)(4)(C) require consent. Once the Superior Court characterized § 1408(c)(4)(C) as a personal jurisdiction provision, it assumed that the statute meant consent to the court's personal jurisdiction in a divorce proceeding for all purposes. The court did not allow for the possibility that § 1408(c)(4)(C) is more limited, and refers to a military serviceperson's consent to the court's authority over him to distribute his pension.
>
> . . . .

"[W]e believe that Congress intended for the consent requirement in § 1408(c)(4)(C) to relate, like the rest of the [USFSPA], specifically to a military member's pension.

. . . .

"[W]e conclude that under § 1408(c)(4)(C), the Pennsylvania courts may not exercise the authority they are provided in the [USFSPA] to distribute a military member's retirement pay in a divorce action, unless the member consents to the court's jurisdiction over his person specifically to distribute the retirement pay.

. . . .

". . . It is evident from the record that none of the actions [Michael] took constituted consent as we have defined it. [Michael's] acceptance of service, his counsel's written general appearance, his participation in discovery matters unrelated to the pay, and his attendance at a separate support proceeding do not suffice. The only activity on [Michael's] part which concerned his pay was the filing of preliminary objections to the trial court's jurisdiction over [Michael] under § 1408(c)(4)(C) to distribute his military pension." *Wagner*, 564 Pa. at 458-63.

*Flora v. Flora*, 603 A.2d 723 (R.I. 1992), is a case that comes from the Supreme Court of Rhode Island. It deals with a post-divorce request for an amendment of the decree of divorce to make a division of military retirement.

Natalie and Elza Flora were divorced in 1983. At the time of their divorce *McCarty* prohibited the division of Elza's military retirement.

In 1988, Natalie filed a complaint with the court "requesting that the court amend the final judgment of divorce and distribute Elza's military pension." *Flora*, 603 A.2d at 723. Natalie asserted that Ezra impliedly consented to the court's jurisdiction by not objecting when the original divorce was heard.

The Rhode Island Supreme Court reviewed cases from other jurisdictions supportive of Natalie's implied consent argument and concluded:

"In this case the requirement of consent is not met since Elza in no way consented to the jurisdiction of the Rhode Island Family Court. We do not find a sufficient basis, in the legislative history of the USFSPA or in the case law, to persuade us that implied consent can meet the consent requirements of § 1408(c)(4). Finally, Elza's actions do not provide a basis for a Rhode Island court to assert jurisdiction over him without raising due-process difficulties." 603 A.2d at 725.

There are a number of cases from various states that are supportive of the contention that since Alfonza did not object to personal jurisdiction when the divorce was initially filed in 1994, he impliedly consented to the division of his military retirement.

The case of *White v. White*, 543 So. 2d 126 (La. App. 1989), illustrates this legal viewpoint. In *White,* the Louisiana Court of Appeals held that 10 § U.S.C. 1408(c)(4) does not require that the service member expressly consent to a trial court's jurisdiction to divide his military retirement. The service member's consent can be implied after he has made a general appearance, which waives all personal jurisdiction objections. 543 So. 2d at 128. Other courts that have followed this reasoning include the California Court of Appeals (*In re Marriage of Jacobson*, 161 Cal. App. 3d 465, 470, 207 Cal. Rptr. 512 [1984]); North Carolina Court of Appeals (*Judkins v. Judkins*, 113 N.C. App. 734, 737, 441 S.E. 2d 139 [1994]); the Texas Court of Appeals (*Morris v. Morris*, 894 S.W.2d 859, 862 [Tex. App. 1995]); the Washington Court of Appeals (*Marriage of Parks*, 48 Wash. App. 166, 170, 737 P.2d 1316 [1987]); the Wisconsin Court of Appeals (*In re Marriage of Kildea v. Kildea*, 143 Wis. 2d 108, 114, 420 N.W. 2d 391 [1988]); and the Virginia Court of Appeals (*Lenhart v. Burgett*, No. 0528-94-1, 1995 WL 129140, at *2 [Va. App. 1995] [unpublished opinion]).

We do not find the terminology "express consent" and "implied consent" useful to our analysis of what constitutes consent under § 1408(c)(4)(C). The use of this terminology in other states' decisions does not really capture the factors the courts are relying on in their analyses. We prefer to focus on a common factual pattern represented

in most of the cases. In most cases, the court is hearing supplemental or ancillary proceedings to an earlier divorce proceeding. In these later proceedings the issue of division of military retirement is being raised for the first time and the service member objects to the division of his or her retirement.

Courts following the "implied consent" viewpoint hold that if objection is not made to personal jurisdiction in the first instance, the service member consents to jurisdiction for purposes of § 1408(c)(4)(C), notwithstanding that the issue of the division of the military retirement may not have been raised until years later in supplemental or ancillary proceedings.

Courts following the "express consent" viewpoint take the position that the service member does not consent to jurisdiction for purposes of § 1408(c)(4)(C) unless the service member fails to object when the issue of division of the retirement is first raised. For these courts a failure to object to jurisdiction at a time before the matter of division of retirement is raised does not constitute consent. They allow an objection to be raised to jurisdiction when the issue of division of retirement is first raised, even if earlier in the proceeding the party did not object to jurisdiction. They look to see what response the party makes after the issue of retirement is raised. If the party doesn't object, there is consent. If the party does object, there is no consent.

Most of the cases deciding jurisdictional issues under the USFSPA are fundamentally distinguishable from the present case. These cases involve circumstances where some time after the decree of divorce, a party comes back to court with a post-decree motion to modify the decree to make a division of military retirement benefits. A determination of what constitutes consent under such circumstances is fundamentally different than what occurred here. Here the court determined jurisdiction and made the division of the retirement benefits during the initial divorce proceeding. Alfonza made no objection to the court's jurisdiction to do so at the time. He did not appeal the court's

determination at the time that it had jurisdiction. Instead, he first raised his objection to jurisdiction 19 years later when his former spouse was seeking to enforce the divorce decree's order regarding division of Alfonza's retirement benefits.

The *Wagner* and *Flora* cases, relied upon by Alfonza, are consistent with our determination in this case that Alfonza consented to jurisdiction. His failure to object when the action was first filed did not amount to consent because his retirement was not identified as an issue in the case. Although there is substantial uncontroverted evidence that Alfonza was aware that Joann was seeking to divide his retirement by their pretrial dealings, it is sufficient that at the trial of the case when the issue of the division of his retirement was put squarely before the district court for decision, he did not in any way raise objection to the court's jurisdiction. The district court went on to specifically find that it had jurisdiction to divide his retirement. Alfonza did not object. He did not file an appeal seeking review of the court's determination that it had jurisdiction. He let 19 years pass before he objected. And then did so only when Joann sought to enforce the 1994 order. In addition, although he made objection to the district court's jurisdiction, he specifically sought relief from the court when he asked the court to modify (he calls it "clarify") the 1994 order to account for the fact he retired much later than contemplated in the 1994 proceeding and had been promoted. He cannot object to both the court's jurisdiction and ask for relief dependent on the court's jurisdiction.

We conclude that Alfonza's failure to object to the district court's jurisdiction in 1994 when the issue of the division of his military retirement was taken up at the trial of the divorce action constitutes "consent to the jurisdiction of the court" under § 1408(c)(4)(C).

AWARD OF ATTORNEY FEES

Alfonza's second argument on appeal is that the district court erred when it awarded attorney fees to Joann. Alfonza argues that the award was not authorized because Joann's claim was for garnishment.

Joann argues that Alfonza is mischaracterizing her motion as a motion for garnishment. She points out that she received the award of attorney fees pursuant to a judgment she received to enforce her divorce decree against Alfonza. Although Joann titled her initial pro se motion as a "Motion to Pertession for Garnishment of Retirement," the district court never considered this a garnishment and the substance of her argument was not a request for garnishment.

Appellate review of the award of attorney fees employs multiple standards of review. First, whether the district court had authority to award attorney fees is a question of law over which appellate review is unlimited. *Rinehart v. Morton Buildings*, *Inc.*, 297 Kan. 926, 942, 305 P.3d 622 (2013). If the district court had authority to award attorney fees, its decision to do so is reviewed for an abuse of discretion. 297 Kan. at 942.

A court may not award attorney fees absent statutory authority or an agreement by the parties. *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013). Whether the district court had the authority to award Joann attorney fees turns on how her motion is classified.

The district court did not specify the authority it relied on when it made its award of attorney fees. However, a review of the record shows that Joann was not arguing for, and the district court was not considering, issuing a garnishment. The record reveals that Joann was asking the district court to enforce its order that she receive 25 percent of Alfonza's military retirement. Joann's attorney never asked the court to garnish any of

Alfonza's income. Further, the district court never discussed garnishment or the particular statutes that govern it. Instead, the district court issued a judgment for Joann reaffirming its jurisdiction to do so and modifying the portion of Alfonza's military retirement Joann is entitled to receive. Because the actual issue argued before and decided by the district court was not a request for garnishment, the district court's authority to award attorney fees was proper pursuant to K.S.A. 2015 Supp. 23-2715.

Affirmed.