# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Rubiela Williams, Respondent,

v.

Ennis Williams, Appellant.

Appellate Case No. 2017-002358

---

Appeal From Richland County
Michelle M. Hurley, Family Court Judge
Gwendlyne Y. Jones, Family Court Judge

---

Opinion No. 5910
Submitted March 1, 2022 – Filed May 25, 2022

---

## REVERSED

---

Ennis Williams, pro se, of Charlotte, North Carolina.

Rubiela Williams, pro se, of Columbia.

---

**KONDUROS, J.:** In this divorce action, Ennis Williams (Husband) appeals the family court's determination it had jurisdiction over him to divide his military retirement benefits. We reverse.[1]

## FACTS/PROCEDURAL HISTORY

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.

Husband married Rubiela Williams (Wife) on February 14, 1990, in Michigan. They had two children—one born in 1997 and one in 2000. Husband joined the United States Navy in January 1993 and retired on February 28, 2014. The parties separated around July 20, 2015, and have been "living separate and apart" since then.

In late 2015, Wife filed a complaint in South Carolina for divorce. She also requested, *inter alia*, custody of the parties' minor child; child support; alimony; equitable apportionment of the parties' assets, debts, and property, including retirement accounts; and an order requiring Husband to set aside his "GI Bill Benefits" for the children equally. At the time of filing, Wife had been a resident of Richland County for at least one year and Husband lived in Mecklenburg County, North Carolina, where the parties last resided together.

On April 14, 2016, Husband filed a Rule 12(b), SCRCP, motion to dismiss, contending that under 10 U.S.C.A. § 1408(c)(4),[2] the family court did not have jurisdiction to divide his military benefits because he currently lived in North Carolina and had never been a resident or domiciled in South Carolina. He stated that he did "not absolutely nor implicitly consent to the jurisdiction of the [family] court." He therefore asserted Wife's causes of action related to his military retirement benefits should be dismissed.

On April 20, 2016, the family court held a hearing on temporary relief. Husband's attorney began by requesting that the court not consider anything related to military retirement because of Husband's pending motion to dismiss that claim for lack of jurisdiction. Husband's attorney then noted Husband was requesting custody of the minor child. That same day—April 20, 2016—Husband filed an answer and counterclaim. In it, he again denied the family court had jurisdiction to divide his retirement military benefits, pursuant to 10 U.S.C.A. § 1408(c)(4). He asserted the family court did not have jurisdiction over him because he did not reside in the state, he was not domiciled in the state, and he did not consent to the

---

[2] 10 U.S.C.A. § 1408(c)(4) provides that a court can divide military retirement benefits only if "the court has jurisdiction over the member by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court."

jurisdiction of the court.[3]  He also counterclaimed seeking, *inter alia*, a divorce; custody of the minor child or in the alternative, visitation; and attorney's fees.

The family court held a hearing on May 11, 2016, on Husband's motion to dismiss for lack of jurisdiction.  On May 18, 2016, the family court issued an order finding Husband consented to the family court's jurisdiction through his affirmative actions—specifically, that he filed an answer and counterclaim and appeared and participated in the temporary hearing.[4]

On May 25, 2015, Husband filed a motion for reconsideration of the family court's order.  He argued he

> was placed in an impossible predicament that he either
> not appear to the temporary hearing and forfeit the ability
> to contest the issues that this [c]ourt did have jurisdiction

---

[3] Husband also asserted "post 9/11 GI Bill benefits" could not be treated as marital property and were not subject to equitable division.  *See Eicher v. Shulkin*, 29 Vet. App. 57, 60 (2017) ("For more than 70 years, veterans have received educational assistance through various 'GI Bills' . . . ."); *Thompson v. United States*, 119 F. Supp. 3d 462, 465 (E.D. Va. 2015) ("'The Post 9/11 Veterans Education Assistance Act of 2008[]' or the 'Post 9/11 GI Bill' . . . provide[s] monetary benefits to eligible military members to assist veterans in readjusting to civilian life, and particularly to assist veterans in paying for higher education." (codified at 38 U.S.C.A. §§ 3301 to 3327)); 38 U.S.C.A. §§ 3311 to 3312 (establishing that individuals who after September 11, 2001, serve on active duty for a specified period of time are entitled to thirty-six months of education assistance); 38 U.S.C.A. § 3313 (providing the assistance includes payment of tuition and fees and a monthly housing stipend, plus a lump sum amount for books, supplies, equipment, and other costs); *Thompson*, 119 F. Supp. 3d at 465 ("[V]eterans who were eligible for retirement on August 1, 2009[,] were entitled to transfer their educational benefits to their spouse or children.").

[4] The family court stated it was not addressing the GI Bill benefits issue because Wife's complaint did not request the benefits be treated as marital property subject to equitable division but only requested the benefits be preserved for the minor children.  *But see Thompson*, 119 F. Supp. 3d at 465 ("[A]n individual approved to transfer entitlement to educational assistance under this section may transfer such entitlement only while serving as a member of the armed forces when the transfer is executed." (quoting 38 U.S.C.A. § 3319(f)(1))).

over . . . , including child custody, alimony/spousal support, visitation, and child support, because the long[-]arm statute vested this [c]ourt with jurisdiction over him as he was served with this action while in this [s]tate.

He also asserted he filed the motion to dismiss six days prior to the temporary hearing and attempted to have the motion heard prior to or on the same day as the temporary hearing but the clerk of court informed his attorney it was impossible to do so. He further contended that prior to the commencement of the temporary hearing, his attorney informed the family court a motion to dismiss for lack of jurisdiction was pending and asked the court to address the motion or in the alternative, continue the temporary hearing until after the court heard the motion to dismiss. He maintained the motion to continue was not granted and the temporary hearing commenced over his objections.

The family court denied the motion for reconsideration on June 13, 2016. The family court issued a subsequent order on October 31, 2016, reiterating its findings from the initial order denying Husband's motion to dismiss for lack of jurisdiction, stating it was denying Husband's motion for reconsideration dated September 26, 2016.[5]

At the hearing regarding the final divorce decree on August 7, 2017,[6] after Husband, appearing pro se, asserted the family court did not have jurisdiction over the military retirement, the family court stated it was again denying Husband's motion regarding jurisdiction.

On October 31, 2017, the family court granted Wife a divorce on the basis of one year's continuous separation. The decree noted the parties had reached a partial settlement primarily on the matter of custody. Regarding Husband's military retirement, the family court found "[Husband] meets the jurisdiction/venue requirements for the State of South Carolina and consented with his appearance and that of his former attorney to [the] presiding court's jurisdiction by filing his

---

[5] The record on appeal does not include a motion for reconsideration with this date.
[6] The Honorable Michelle M. Hurley had presided over all of the proceedings discussed before this point. The Honorable Gwendlyne Y. Jones presided over the final divorce hearing and issued the divorce decree.

answer and counterclaim."  The family court also determined Wife was entitled to a percentage of Husband's military retirement.[7]  This appeal followed.

**STANDARD OF REVIEW**

An appellate court reviews decisions of the family court de novo.  *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011).  The party contesting the family court's decision bears the burden of demonstrating the family court's factual findings are not supported by the preponderance of the evidence.  *Id.* at 388, 709 S.E.2d at 653.  "*Lewis* did not address the standard for reviewing a family court's evidentiary or procedural rulings, which we review using an abuse of discretion standard."  *Stoney v. Stoney*, 422 S.C. 593, 594 n.2, 813 S.E.2d 486, 486 n.2 (2018) (per curiam).  "An abuse of discretion occurs either when a court is controlled by some error of law, or where the order is based upon findings of fact lacking evidentiary support."  *Sellers v. Nicholls*, 432 S.C. 101, 113, 851 S.E.2d 54, 60 (Ct. App. 2020) (quoting *Patel v. Patel*, 359 S.C. 515, 529, 599 S.E.2d 114, 121 (2004)).  "A failure to exercise discretion amounts to an abuse of that discretion." *Id.* at 114, 851 S.E.2d at 60 (quoting *Samples v. Mitchell*, 329 S.C. 105, 112, 495 S.E.2d 213, 216 (Ct. App. 1997)).

**LAW/ANALYSIS**

**I.  Timing of Hearing Jurisdictional Challenge and Motion for Continuance**

Husband contends the family court erred in failing to first decide his prepleading personal jurisdiction challenge made at the outset of the case.  He also maintains the family court erred in failing to grant him a continuance until his motion to dismiss for lack of personal jurisdiction could be heard.  We agree.

"As actions are called, counsel may request that the action be continued.  If good and sufficient cause for continuance is shown, the continuance may be granted by the court."  *Sellers v. Nicholls*, 432 S.C. 101, 113-14, 851 S.E.2d 54, 60 (Ct. App. 2020) (quoting Rule 40(i)(1), SCRCP).

At the start of the temporary hearing, the family court first stated that the hearing was on the motion to dismiss for the jurisdictional issue.  Husband's counsel stated

---

[7] The family court found Husband "agreed he would allow both children use of his total GI Bill, unless such was being utilized by [him]."

"that motion to dismiss was actually scheduled for May 11.  I would like to continue it until we can get that --."  The court responded "I just didn't see where there was a motion --."  Wife's counsel interjected "we were not even served with this motion until this morning, and we're asking that the temporary issues at least as far as custody, child support, alimony be heard this morning."  Husband's counsel responded, "The motion is regarding dismissing their claim for his military retirement and also in the [a]nswer and [c]ounterclaim with regard to the G.I. Bill."  The family court then stated, "I misstated that.  We are here only on [Wife's] motion for temporary relief . . . , so we will not hear your motion to dismiss, but we will hear your motion for temporary relief."  Following Wife's argument, Husband's counsel responded and began by noting there was a motion to dismiss on the military retirement benefits for lack of jurisdiction.  In the temporary order following the hearing, the family court stated "[Husband's] counsel moved to continue [Wife's] Motion for Temporary Relief scheduled for today until [Husband's] Motion to Dismiss for lack of jurisdiction with regard[] to his military retirement and GI Bill benefits, which was filed on April 14, 2016, could be heard on May 11, 2016."  The family court stated it "denied [Husband's] Motion to Continue and the hearing commenced."

"Under the current Rules of Civil Procedure, a defense of lack of jurisdiction over the person is made by a Rule 12(b)(2) motion."  5 S.C. Jur. *Abatement, Revival, and Survival of Actions Assignments* § 4 (1991); Rule 12(b), SCRCP ("[T]he following defenses may at the option of the pleader be made by motion: . . . (2) lack of jurisdiction over the person . . . .  A motion making any of these defenses shall be made before pleading if a further pleading is permitted.  No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion.").  "The defenses specifically enumerated (1)-(8) in subdivision (b) of this rule . . . shall be heard and determined before trial on application of any party, unless the [c]ourt orders that the hearing and determination thereof be deferred until the trial."  Rule 12(d), SCRCP.

"Rule 1, SCRCP[,] provides that the Rules of Civil Procedure shall be 'construed to secure the just, speedy[,] and inexpensive determination of every action.'"  *Royster Co. v. E. Distrib., Inc.*, 301 S.C. 18, 21, 389 S.E.2d 863, 864 (1990). The South Carolina Rules of Civil Procedure apply in family court when no family court rule provides otherwise.  Rule 81, SCRCP.

In *Combs v. Bakker*, the United States Court of Appeals for the Fourth Circuit criticized the district court for causing "awkwardness" with its "approach" of

"address[ing] first the challenge under Rule 12(b)(6) to the merits" before "the more fundamental challenge under Rule 12(b)(2) to personal jurisdiction." 886 F.2d 673, 675 (4th Cir. 1989). The Fourth Circuit determined the "proper course in review is to consider first whether the district court had grounds for personal jurisdiction as to all or any of the claims, that being the actual breadth of the defendants' Rule 12(b)(2) motion, and also the more fundamental challenge." *Id.*; *see also Dunbar v. Vandermore*, 295 S.C. 493, 497, 369 S.E.2d 150, 152 (Ct. App. 1988) (finding federal case law persuasive in interpreting the federal rules (citing Harry M. Lightsey & James F. Flanagan, *South Carolina Civil Procedure* 7 (1st ed. 1985))).

Because Husband's motion asserted the family court's lack of personal jurisdiction over him in relation to his military retirement benefits, the family court should have considered it first. We agree with Husband that by not hearing the motion to dismiss first, he was placed in the position of either not answering Wife's complaint or potentially waiving his jurisdictional issue. The family court should have first considered whether it had jurisdiction over the military retirement benefits. Accordingly, the family court erred in not first hearing Husband's motion to dismiss for lack of jurisdiction.

## II. Consent to Jurisdiction over Military Retirement Benefits

Husband contends the family court erred in ignoring federal law by ruling Wife was entitled to a share of his military retirement benefits based on the family court's finding Husband consented to jurisdiction over his military retirement benefits by his appearance and filing of an answer and counterclaim. Husband asserts the family court relied solely on South Carolina's long-arm statute in determining personal jurisdiction instead of the requirements 10 U.S.C.A § 1408(c) established. He therefore maintains this court should reverse the family court's award of a portion of his military retirement benefits to Wife. We agree.

### A. The Uniformed Services Former Spouses' Protection Act

"Domestic relations are preeminently matters of state law." *Delrie v. Harris*, 962 F. Supp. 931, 933 (W.D. La. 1997). However, "[t]he Uniformed Services Former Spouses' Protection Act [(the USFSPA or the Act)] presents a rare instance where Congress has directly and specifically legislated in the area of domestic relations." *Id.* (citation omitted). "When Congress legislates on a subject . . . within its constitutional control and over which it has jurisdiction, the state law must yield

when there is a conflict with a valid federal law." *Kovacich v. Kovacich*, 705 S.W.2d 281, 283 (Tex. App. 1986) (citing *Free v. Bland*, 369 U.S. 663 (1962)).

The USFSPA provides that "a court may treat disposable retired pay payable to a member [of the military] . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court," "[s]ubject to the limitations of this section." 10 U.S.C.A. § 1408(c)(1).[8] However, the Act specifies:

> A court may not treat the disposable retired pay of a member [of the military] in the manner described . . . unless the court has jurisdiction over the member by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court.

10 U.S.C.A. § 1408(c)(4); *see also Blackson v. Blackson*, 579 S.E.2d 704, 712 (Va. Ct. App. 2003) ("Under the provisions of the USFSPA, a state court may acquire jurisdiction to divide a service member's disposable retired pay in three circumstances: (1) if the member is domiciled in the state; (2) if the member is a resident of the state; or (3) if the member gives consent to the state's jurisdiction.").

### B. History of the USFSPA

Congress passed the Act in 1982 due to the Supreme Court's decision the prior year in *McCarty v. McCarty*, 453 U.S. 210 (1981), which "held that federal law precludes a state court from dividing military retirement pay pursuant to state community property law." *Delrie*, 962 F. Supp. at 933; *see also Brown v. Harms*, 863 F. Supp. 278, 281 (E.D. Va. 1994) ("In 1981, the Supreme Court held that the existing federal laws granted husbands and wives no right to their spouses' military pensions, and that state courts were precluded from applying their community

---

[8] This authorization applies to "pay periods beginning after June 25, 1981." 10 U.S.C.A. § 1408(c)(1). The statute restricts a court from treating the retirement as property "if a final decree of divorce, dissolution, annulment, or legal separation . . . (A) was issued before June 25, 1981, and (B) did not treat (or reserve jurisdiction to treat) any amount of retired pay of the member as property of the member and the member's spouse or former spouse." *Id.*

property laws to such pensions." (citing *McCarty*, 453 U.S. at 223-36)). Because "Congress[ was] concerned with the effect *McCarty* would have on the divorced spouses of military personnel but wish[ed] to retain certain protections for military retirees, [it] enacted the [USFSPA]." *Delrie*, 962 F. Supp. at 933. "The Act modified *McCarty* and, in effect, permitted states to treat military retirement benefits as either the property of the military member or as community property, with certain specified conditions." *Id.*; *see also Petters v. Petters*, 560 So. 2d 722, 725 (Miss. 1990) ("Congress enacted [the] []USFSPA and resolved a controversy theretofore existing regarding state authority to adjudge the rights of (ex)spouses in a retired serviceman's military retirement pension.").

## C. Preemption of State Long-Arm Statutes

"Section[] 1408 . . . (c)(4) impose[d] new substantive limits on state courts' power to divide military retirement pay." *Mansell v. Mansell*, 490 U.S. 581, 590 (1989). "Because . . . th[is] provision[] pre[]empts state law, the argument that the Act has no pre[]emptive effect of its own must fail. Significantly, Congress placed each of these substantive restrictions on state courts in the same section of the Act as § 1408(c)(1)." *Id.* at 591-92 (footnote omitted).

Generally, "[a] court may exercise personal jurisdiction over a person domiciled in, . . . doing business [in], or maintaining his . . . principal place of business in[] this State as to any cause of action." S.C. Code Ann. § 36-2-802 (2003). "Traditionally, our courts have employed a two-step analysis in determining whether it is proper to exercise personal jurisdiction over a nonresident defendant." *Power Prods. & Servs. Co. v. Kozma*, 379 S.C. 423, 431, 665 S.E.2d 660, 664 (Ct. App. 2008). "First, the trial court must determine that the South Carolina long-arm statute applies. Second, the trial court must determine that the nonresident's contacts in South Carolina are sufficient to satisfy due process requirements." *Id.*

However, "[b]y virtue of the Supremacy Clause, th[e] federal enactment [of the USFSPA] overrides [a] state's long-arm statute[] to the extent that [the] state's law would exceed the limitations of the federal enactment." *Petters*, 560 So. 2d at 725; *see also In re Marriage of Booker*, 833 P.2d 734, 739 (Colo. 1992) (en banc) ("The question of whether a trial court acquires jurisdiction over a military member's military pension is governed not by principles of state rules of in personam jurisdiction or procedure, but rather by the specific terms of the Act that, by virtue of the Supremacy Clause of the United States Constitution, in effect preempt state rules of procedure insofar as jurisdiction to consider this particular asset is

concerned." (citing U.S. Const. art. VI, cl. 2; *Petters*, 560 So. 2d at 725; *Mortenson v. Mortenson*, 409 N.W.2d 20, 22 (Minn. Ct. App. 1987); *Kovacich*, 705 S.W.2d at 283; *Allen v. Allen*, 484 So. 2d 269 (La. Ct. App. 1986))).

"[S]ection 1408 places a strict limitation on the court's exercise of jurisdiction to dispose of [a member's] military retirement pay. This federal law preempts the application of [the state statute], which would determine whether [the member] had 'minimum contacts' with the state sufficient to confer jurisdiction over his person." *Pender v. Pender*, 945 S.W.2d 395, 396 (Ark. Ct. App. 1997). "[T]he 'minimum contacts' test does not apply in a suit for the partition of military retirement pay, making the requirements for personal jurisdiction those set out in 10 U.S.C.A. § 1408(c)(4)." *Id.* (citing *Southern v. Glenn*, 677 S.W.2d 576 (Tex. App. 1984)). The fact that a military member meets the minimum-contacts test does not determine the matter of personal jurisdiction when the member does not meet the terms of the federal statute regulating disposition of military retirement pay. *Id.* at 396-97 (citing *Southern*, 677 S.W.2d at 582). "Because Congress legislated on a subject within its constitutional parameters and over which it has jurisdiction, the state law must yield when it conflicts with federal law." *Id.* at 397. "[Section] 1408(c)(4) refers to personal jurisdiction. For this . . . Congress chose not to use state law. Instead, it usurped state long-arm statutes and provided in § 1408(c)(4)(A)-(C) its own tests of personal jurisdiction that all state courts must apply." *Wagner v. Wagner*, 768 A.2d 1112, 1117 (Pa. 2001).

"[Section] 1408(c)(4) prohibits state courts from exercising authority to determine the status of a military member's pension unless the court, as of the commencement of the action, has personal jurisdiction over the member by virtue of residence (other than because of military assignment), domicile, or consent." *In re Marriage of Akins*, 932 P.2d 863, 867 (Colo. App. 1997). "Jurisdiction under the USFSPA, therefore, is more restrictive than the minimum contacts test, pursuant to which an out-of-state defendant may be subjected to the jurisdiction of the forum state." *Id.* (citing *Flora v. Flora*, 603 A.2d 723 (R.I. 1992); *Southern*, 677 S.W.2d at 582; *see also Uniform Services Former Spouses' Protection Act: Is There Too Much Protection for the Former Spouse?*, 47 A.F. L. Rev. 1, 18 (1999) ("When Congress enacted the USFSPA, it limited the subject matter jurisdiction of state courts over military retirement pay to those instances in which personal jurisdiction existed over the military member other than by virtue of military assignment. These jurisdictional provisions are more restrictive than the minimum contacts test which will subject an out-of-state defendant to the jurisdiction of the forum state." (footnotes omitted)). "[S]tates have . . . held uniformly, in this limited context, that

a state's process arm is not nearly so long as otherwise." *Petters*, 560 So. 2d at 726 (citing *In re Marriage of Hattis*, 242 Cal. Rptr. 410 (Cal. Ct. App. 1987); *Southern*, 677 S.W.2d at 582; *Dunn v. Dunn*, 708 S.W.2d 20 (Tex. App. 1986); *White v. White*, 543 So. 2d 126 (La. Ct. App. 1989); *In re Marriage of Parks*, 737 P.2d 1316 (Wash. Ct. App. 1987); *Mortenson v. Mortenson*, 409 N.W.2d 20 (Minn. Ct. App. 1987)).

"Congress allows 'courts of competent jurisdiction' to partition retirement pay 'in accordance with the law of the jurisdiction of such court.'" *Wagner*, 768 A.2d at 1117 (quoting 10 U.S.C.A. § 1408(a)(1)(A), (c)(1)). "[T]he Act only allows courts to apply state divorce laws to military pensions. It does not purport to do more." *Brown*, 863 F. Supp. at 281. "Nowhere does it expressly or impliedly grant any court the power to adjudicate any cause, nor does it provide any substantive rule for the treatment of military pensions in divorce or domestic relations contexts." *Id.*

### D. Obtaining Jurisdiction Under the Act and the Meaning of Consent

"Congress has authorized state courts to consider the status of a military pension in a dissolution proceeding on the express condition that the court has obtained personal jurisdiction over the military member in accordance with the specific statutory criteria of § 1408(c)(4)." *In re Marriage of Akins*, 932 P.2d at 867. "This limitation on a court's jurisdiction was apparently adopted to curtail 'forum-shopping' by spouses who might file proceedings in states with favorable marital property laws but with which the military pensioner had little contact." *Id.*; *see also Mansell*, 490 U.S. at 591 ("[Section] 1408(c)(4) prevents spouses from forum shopping for a [s]tate with favorable divorce laws."); *Petters*, 560 So. 2d at 726 ("The political history of [the] []USFSPA makes clear a purpose to limit forum shopping and protect former servicemen from being required to defend their retirement pensions in foreign forums with which they have little contact."). "The law was not designed, however, to permit the military pensioner to likewise 'forum shop' by changing his domicile to avoid the jurisdiction of a court." *In re Marriage of Akins*, 932 P.2d at 867.

"Section 1408(c)(4) prohibits state courts from exercising authority to determine the status of a military member's pension unless personal jurisdiction over the member is acquired by one of three specific methods." *In re Marriage of Booker*, 833 P.2d at 739. "Many courts have concluded that section 1408(c)(4) constitutes a limitation on the subject matter jurisdiction of state courts over military

pensions." *Id.* (citing *Steel*, 813 F.2d at 1552; *Lewis v. Lewis*, 695 F. Supp. 1089 (D. Nev. 1988); *Allen*, 484 So. 2d at 270-71; *Seeley v. Seeley*, 690 S.W.2d 626 (Tex. App. 1985)).  "Other courts have construed the statute as restricting state court exercise of otherwise valid in personam jurisdiction over military personnel." *Id.* (citing *Kovacich*, 705 S.W.2d at 282; *Seeley*, 690 S.W.2d at 627).

> Whatever the theory, . . . Congress has in effect both permitted state courts to consider what status to accord military pensions in the context of dissolution proceedings and prescribed the manner by which personal jurisdiction must be obtained over the military member who is a party to such proceedings before they may apply the substantive laws of their states to that particular asset.

*Id.*

Of the three ways prescribed by Congress for a state to acquire the authority to divide a military member's pension under § 1408(c)(4), the only one relevant here is the member's consent.  "The USFSPA's jurisdictional provision does not set forth the manner in which the service member must consent to the forum state's jurisdiction."  2 Brett R. Turner, *Equitable Distribution of Property* § 6:4 (4th. 2021).  "There is a considerable body of case[ ]law from . . . states directed toward what constitutes consent under § 1408(c)(4)(C)."  *Williams v. Williams*, 367 P.3d 1267, 1272 (Kan. Ct. App. 2016), *aff'd sub nom. In re Marriage of Williams*, 417 P.3d 1033 (Kan. 2018).  South Carolina has not expressed a position on the meaning of consent in this context.  *See Coon v. Coon*, 364 S.C. 563, 614 S.E.2d 616 (2005) (discussing the USFSPA but not analyzing the meaning of consent under the statute).  The states that have weighed in have "conflicting interpretations" of "the meaning of 'consent' under subsection (c)(4)(C) of the [US]FSPA."  *Davis v. Davis*, 284 P.3d 23, 26 (Ariz. Ct. App. 2012); *Williams*, 367 P.3d at 1272 (acknowledging "the divergent views . . . courts have taken on the issue" (citing Ann K. Wooster, Annotation, *Construction and Application of Federal Uniformed Services Former Spouse Protection Act in State Court Divorce Proceedings*, 59 A.L.R. 6th 433 (2010))); *see also* Captain Kristine D. Kuenzli, *Uniformed Services Former Spouses' Protection Act: Is There Too Much Protection for the Former Spouse?*, 47 A.F. L. Rev. 1, 18-19 (1999) ("This provision has raised two primary issues in case law regarding jurisdiction.  The

first question focused on what was required for the court to find that the member had 'consented' to the court's jurisdiction.").

## E. Implied Consent to Jurisdiction

Some courts have concluded the Act requires only implied consent to the court's general jurisdiction to obtain personal jurisdiction over a service member.

"Some courts discuss the issue of consent in terms of whether § 1408(c)(4)(C) is a provision dealing with 'subject matter jurisdiction' or 'personal jurisdiction.' Other courts discuss whether § 1408(c)(4)(C) requires 'express consent' or if 'implied consent' is sufficient." *Williams*, 367 P.3d at 1272; *see also Broadbent v. Broadbent*, 451 P.3d 930, 932 (Okla. Civ. App. 2019) (noting state courts are "split [over] whether consent by a military spouse may be express or implied"); *Davis*, 284 P.3d at 26 ("The disagreement [over the meaning of consent] stems from whether implied consent satisfies the requirements of subsection (c)(4)(C)."). "While some states have rejected the theory of implied consent, others have held that implied consent satisfies the requirements of the [US]FSPA or that the protections of the [US]FSPA may be waived through state procedural rules." *Davis*, 284 P.3d at 26.

In *Williams*, the Kansas Court of Appeals observed the parties' contrary positions each had "substantial support" from "the case[ ]law of [its] sister states." 367 P.3d at 1272. In that case, the husband "contend[ed] that the USFSPA requires 'express consent' and he did not expressly consent to the court's jurisdiction by 'filing an answer, appearing, and actively participating in the case'" and that "if 'implied consent' is sufficient, the consent 'must be specific to the issue of military retirement, when the underlying case involves multiple issues.'" *Id.* Whereas the wife "argue[d] that [the husband] consented to jurisdiction when he appeared and participated in the proceedings without objecting to the district court's jurisdiction over his military retirement." *Id.*

One court recognizing the split between states observed courts have had conflicting interpretations of consent when "a service member remains silent regarding the court's authority to divide the military benefits, *i.e.* implied consent." *Broadbent*, 451 P.3d at 932-33 (citing *Johnson v. Johnson*, 386 P.3d 1049, 1055 (Okla. Civ. App. 2016)). That court noted that the *Johnson* opinion had cited to *Davis*, 284 P.3d at 27, "which held that § 1408(c)(4)(C) does not require express consent, and that 'a state court may exercise personal jurisdiction' over a military member's

retirement when that member 'makes a general appearance without expressly contesting personal jurisdiction.'" *Broadbent*, 451 P.3d at 933 (citing *Johnson*, 386 P.3d at 1055; *White v. White*, 543 So. 2d 126 (La. Ct. App. 1989) (finding consent can be implied after a general appearance, which waives all personal jurisdiction objections); *Judkins v. Judkins*, 441 S.E.2d 139 (N.C. Ct. App. 1994) (holding member consented by making general appearance and filing answer with counterclaims without contesting jurisdiction); *Morris v. Morris*, 894 S.W.2d 859, 862 (Tex. App. 1995) (deciding member consented by filing general answer and not contesting court's jurisdiction until appeal)).

"[S]tates have held that consent by a military spouse may be express or implied, and that a general appearance coupled with a failure to timely object to personal jurisdiction constitute implied consent under [s]ection 1408(c)(4)(C)." *Pierce v. Pierce*, 132 So. 3d 553, 562 (Miss. 2014) (citing *Judkins*, 441 S.E.2d at 140; *Kildea v. Kildea*, 420 N.W.2d 391, 394 (Wis. Ct. App. 1988); *Southern*, 677 S.W.2d at 583); *see also* Kuenzli, *Uniformed Services Former Spouses' Protection Act: Is There Too Much Protection for the Former Spouse?*, 47 A.F. L. Rev. at 19 ("The majority of jurisdictions have concluded that a general appearance is tantamount to consent to the court's jurisdiction for all purposes, including division of the military pension. *Since no requirement exists for the member to specifically consent to the court's authority to divide the military retirement pay*, this reading of the statute seems appropriate. After all, the USFSPA only requires consent to the jurisdiction of the court, *not consent to the court's authority to divide the pension*." (emphases added) (footnote omitted)). "Most courts in other states have held that a party impliedly consents to jurisdiction under [the] []USFSPA where he or she waives a challenge to the court's personal jurisdiction under state law." *In re Marriage of Robinson*, 33 N.E.3d 260, 266-67 (Ill. App. Ct. 2015) (citing *In re Marriage of Booker*, 833 P.2d at 740; *Gowins v. Gowins*, 466 So. 2d 32, 34-35 (La. 1985); *Pierce*, 132 So. 3d at 562-63; *Davis*, 284 P.3d at 27; *Judkins*, 441 S.E.2d at 140; *Seeley*, 690 S.W.2d at 628; *Blackson*, 579 S.E.2d at 712; *In re Marriage of Peck*, 920 P.2d 236, 239 (Wash. Ct. App. 1996); *Kildea*, 420 N.W.2d at 394); *see also Pierce*, 132 So. 3d at 562 ("[T]he protections of [s]ection 1408(c)(4), like other limitations on a state's authority to acquire personal jurisdiction, may be waived." (quoting *Petters*, 560 So. 2d at 726)); *id.* ("[A] waiver c[an] be accomplished through a general appearance or 'anything else which might be construed as a present waiver.'" (quoting *Petters*, 560 So. 2d at 726)); *Petters*, 560 So. 2d at 726 ("Other states have recognized this waiver doctrine in cases where the defendant entered a general appearance or waived the service of process upon him."); 2 Turner, *Equitable Distribution of Property* § 6:4 ("The service member

clearly consents by litigating the case without expressly raising the jurisdictional provision as an issue. In other words, the burden of invoking the USFSPA's jurisdictional provision is on the service member." (footnote omitted)); *id.* ("The service member also clearly consents by expressly agreeing to a state's jurisdiction in a stipulation or settlement agreement."); *id.* ("A majority of state courts held that the service member consents to the state's jurisdiction by requesting affirmative relief in the case or otherwise making a general appearance." (footnote omitted)).

Wisconsin is one of those states that follows the position that § 1408(c)(4) "only requires consent to the jurisdiction of the court, not consent to the court's authority to divide the pension." *Kildea*, 420 N.W.2d at 393. The Wisconsin Court of Appeals has held that "[h]ad Congress intended specific consent to be a requirement, it would have been a simple matter to draft the statute to do so." *Id.* The court opined that "[b]y drafting it as Congress did, the statute curtails 'forum shopping' by the nonmilitary spouse, but does not give an absolute 'veto power' to the military spouse." *Id.* at 394 (citing *Southern*, 677 S.W.2d at 583). The court "conclude[d] that . . . [§] 1408(c)(4) is clear on its face and that consent to personal jurisdiction is sufficient to give the court authority to divide the pension. We decline to adopt the strained interpretation urged by [the husband]." *Id.* The court noted, "Other jurisdictions have likewise concluded that a general appearance is tantamount to consent to the court's jurisdiction for all purposes, including division of the military pension." *Id.* (citing *In re Marriage of Jacobson*, 207 Cal. Rptr. 512 (Cal. Ct. App. 1984); *Seeley*, 690 S.W.2d at 628). The court determined that in that case, the husband's "general appearance and failure to timely object to personal jurisdiction gave the trial court the authority to divide his military pension." *Id.*

In another case adopting the same position, after the appellate court found the husband had consented when he had not objected to the jurisdiction of the court to divide his military retirement benefits during the divorce and first objected nineteen years later, once the wife filed a motion to garnish his retirement, the husband argued to the Kansas Supreme Court that consent must be (1) explicit because "the plain meaning of 'consent' is not 'failure to object'" and (2) specific to jurisdiction over the military benefits. *In re Marriage of Williams*, 417 P.3d at 1037-38, 1047. The court was "not persuaded that the USFSPA requires specific consent to the consideration of retirement benefits. . . . [Section] 1408(c)(4)(C) states the service member must 'consent to the jurisdiction of the court.' It does not say he or she must consent to the court dividing military retirement benefits." *Id.* at 1047. The court determined that "[u]nder the circumstances of th[at] case, a

Kansas court with personal jurisdiction over an individual has subject-matter jurisdiction to divide marital property, including military retirement benefits." *Id.*

Many of the cases discussing the subject of consent to jurisdiction over military retirement differ from the present case in that in those cases, the military members did not raise an objection to jurisdiction and made a general appearance. The Arizona Court of Appeals stated that it "agree[d] with those courts holding that a state court may exercise personal jurisdiction over a military member who makes a general appearance without expressly contesting personal jurisdiction." *Davis*, 284 P.3d at 27 (citing *Gowins*, 466 So. 2d at 36 ("10 U.S.C.A. § 1408(c)(4)(C) does not require express consent. A military spouse can give implied consent to a state court's jurisdiction by making a general appearance, waiving all jurisdictional objections."); *Judkins*, 441 S.E.2d at 140 (state court obtained personal jurisdiction over military member where he made a general appearance by seeking affirmative relief in his answer without contesting personal jurisdiction); *Kildea*, 420 N.W.2d at 393-94 (holding that the military member's "general appearance and failure to timely object to personal jurisdiction gave the trial court the authority to divide his military pension")).

## F. Express Consent to Division of Military Retirement Benefits

"Other[] [state courts] have suggested that a defendant must affirmatively state his or her 'consent' to jurisdiction." *In re Marriage of Robinson*, 33 N.E.3d at 267 (citing *In re Marriage of Akins*, 932 P.2d at 867-68; *Davis*, 284 P.3d at 26-27 (recognizing disagreement and collecting cases)); *see also* 2 Turner, *Equitable Distribution of Property* § 6:4 ("A minority of decisions holds that the service member may refuse consent to division of military retirement benefits, while still litigating other issues in the case and indeed obtaining affirmative relief upon them."). Corpus Juris Secundum provides that "state courts may not exercise authority to distribute [a] nonresident military member's retirement pay in a divorce action unless the member consents to the court's jurisdiction over his person specifically to distribute the retirement pay" and cites to a Pennsylvania Supreme Court case to support this statement. 27C C.J.S. *Divorce* § 967 (2016) (citing *Wagner*, 768 A.2d at 1119). In that case, the supreme court, on appeal from an intermediate appellate court, examined to what a military member must consent under § 1408(c)(4)(C). *Wagner*, 768 A.2d at 1117. The supreme court noted that once the intermediate court "characterized § 1408(c)(4)(C) as a personal jurisdiction provision, it assumed that the statute meant consent to the court's personal jurisdiction in a divorce proceeding for all purposes." *Id.* "The

[intermediate] [c]ourt did not allow for the possibility that § 1408(c)(4)(C) is more limited[] and refers to a military serviceperson's consent to the court's authority over him to distribute his pension." *Id.* However, the supreme court determined it needed to address that possibility. *Id.*

The supreme court began its examination of Congress's intent by recognizing "that Congress views domestic relations as virtually the exclusive province of the states, and as an area in which it is reluctant to intrude." *Id.* (citing *Sosna v. Iowa*, 419 U.S. 393, 404 (1975)). The court noted "the authority granted to state courts in the family law context in which § 1408(c)(4)(C) operates is comprehensive. In divorce actions, state courts are empowered to decide a variety of matters; they dissolve marriages, resolve property rights, and determine issues of child custody, alimony[,] and support." *Id.* at 1118. Further, the court observed that "[m]any state courts . . . have the power to determine property rights, even after a marriage has been dissolved in another forum." *Id.* The court noted "the rules that apply to the courts' authority over a person, including a military member, to render valid judgments are far-reaching. In [many states], courts may issue a divorce decree *ex parte*, as long as the plaintiff satisfies a residency requirement and serves the complaint." *Id.* The court noted that generally, when "a defendant is subject to a state's long-arm statute and has sufficient contacts with that state, his rights in the matters ancillary to divorce may be determined by its courts." *Id.* Following a court's obtaining personal jurisdiction over a defendant in an initial divorce action, the court is often then "empowered to bind him by subsequent orders over connected matters, including the partition of marital assets." *Id.*

The court noted that in line with the federal policy to limit federal intrusion into the area of domestic relations, the Act controls the authority that state courts have over only a single item—military retirement pay. *Id.* "The Act represents 'one of those rare instances where Congress has directly and specifically legislated in the area of domestic relations,' for the limited purpose of overriding the preemptive effect of federal law on the disposition in divorce actions of military pensions." *Id.* (quoting *Mansell*, 490 U.S. at 587). Congress did not attempt to regulate any other issue that could "arise in a military member's divorce nor did it purport to speak to a member's conduct in litigation with regard to any issue *but the retirement pay*." *Id.* (emphasis added). "Section 1408(c)(4) preempts state long-arm statutes only in connection with a court's authority to determine a military member's retirement pay, and leaves all other rules by which state courts acquire personal jurisdiction over a military member for divorce and ancillary economic issues untouched." *Id.* "By its terms, § 1408(c)(4)(C) reflects Congress'[s] narrow aim. While the

reference to jurisdiction in § 1408(c)(4)(C) is unqualified, § 1408(c)(4)(C) contains a reference to § 1408(c)(1)'s specific focus on the retirement pay." *Id.* "Reading the language of § 1408(c)(4)(C) in context and consistently with the Act's scope and object, we believe that Congress intended for the consent requirement in § 1408(c)(4)(C) to relate, like the rest of the Act, specifically to a military member's pension." *Id.*

The *Wagner* court found that "determin[ing] otherwise . . . would run counter to Congress'[s] purpose [in enacting the Act]." *Id.* "The right to consent in § 1408(c)(4)(C) carries with it, of course, the right not to consent." *Id.* "Under the [intermediate] [c]ourt's construction of the statute, a military member who seeks § 1408(c)(4)(C)'s protection should withhold his consent to the trial court's personal jurisdiction in general." *Id.* However, the supreme court found this interpretation "would mean that Congress gave a military member . . . the power to veto the personal jurisdiction a court might otherwise have to dissolve a marriage or to determine" other matters that divorce actions raise, such as the division of other marital assets, by withholding consent under the statute. *Id.* at 1118-19. "Given the federal principle that family law is preeminently a local matter and the limited focus of the Act, this simply cannot be the case." *Id.* at 1119.

The *Wagner* court further found the intermediate "[c]ourt's construction is unworkable. . . . [T]he [intermediate] [c]ourt suggested that a military member who does not consent under § 1408(c) to the trial court's authority to distribute his retirement pay should file preliminary objections to the court's personal jurisdiction." *Id.* The supreme court noted that "[t]ypically, however, [the member] will be subject to the court's personal jurisdiction, no matter what he files or states. Thus, a general assertion that withholds consent to the court's personal jurisdiction would be legally meaningless on its face." *Id.* "In this context then, the assertion that has legal meaning is one . . . that withholds consent specifically to the court's jurisdiction with respect to the retirement pay." *Id.* The supreme court determined a military member would be "ill-advised" to take any of the intermediate court's suggestions—"refuse service or make no appearance"—for how to avoid "a finding of consent under the statute." *Id.* The supreme court found these options "encourage a military member to flout process and force upon him an unreasonable choice between participating in and remaining absent from important judicial proceedings." *Id.*

The supreme court "conclude[d] that under § 1408(c)(4)(C), the Pennsylvania courts may not exercise the authority they are provided in the Act to distribute a

military member's retirement pay in a divorce action, unless the member consents to the court's jurisdiction over his person specifically to distribute the retirement pay." *Id.* Based on the circumstances, the *Wagner* court determined the trial court did not have jurisdiction over the husband's retirement benefits. *Id.* at 1120. The court found "none of the actions [the husband] took constituted consent as we have defined it. [The husband's] acceptance of service, his counsel's written general appearance, his participation in discovery matters unrelated to the pay, and his attendance at a separate support proceeding do not suffice." *Id.* The court noted "[t]he *only activity on [the husband's] part which concerned his pay* was the filing of preliminary objections to the trial court's jurisdiction [over the husband] and the refusal to consent." *Id.* (emphasis added).

In *Johnson*, the Oklahoma Court of Civil Appeals followed the *Wagner* court's reasoning that "courts may not exercise the authority they are provided in the Act to distribute a military member's retirement pay in a divorce action, *unless the member consents to the court's jurisdiction over his person specifically to distribute the retirement pay*." *Johnson*, 386 P.3d at 1054 (emphasis added by court) (quoting *Wagner*, 768 A.2d at 1119). The court found "the *Wagner* [c]ourt's interpretation of [§] 1408(c)(4)(C) to be instructive." *Johnson*, 386 P.3d at 1054 (citing *In re Marriage of Tucker*, 277 Cal. Rptr. 403, 409 (Cal. Ct. App. 1991) (holding pursuant to 1408(c)(4)(C), the service member must "consent[ ] to disposition of [the member's] military retirement" in order for the trial court to divide the military retirement benefits)). The *Johnson* court also found the *Wagner* court's interpretation to be consistent with the United States Supreme Court's guidance on the Act in *Mansell*:

> We realize that reading the [Act] literally may inflict economic harm on many former spouses. But we decline to misread the statute in order to reach a sympathetic result when such a reading requires us to do violence to the plain language of the statute and to ignore much of the legislative history. Congress chose the language that requires us to decide as we do, and Congress is free to change it.

*Johnson*, 386 P.3d at 1054-55 (alteration by court) (quoting *Mansell*, 490 U.S. at 594).

In the *Johnson* case, the court "not[ed] the husband had immediately and expressly contested personal jurisdiction of the court to divide his retirement in the action filed." *Broadbent*, 451 P.3d at 933 (citing *Johnson*, 386 P.3d at 1055).

California interpreted the consent required by § 1408(c)(4)(C) in a similar manner as the *Wagner* court in the case of *In re Marriage of Tucker*, 277 Cal. Rptr. at 406-08. In that case, the wife argued the husband "consented to the trial court's jurisdiction over his pension" "by consenting to the trial court's resolution of certain portions of the dissolution action—child custody, support[,] and portions of the parties' personal property." *Id.* at 406. The court noted that the wife's "position in this regard is consistent with assumptions some courts have made with respect [to] Congress's intent in enacting . . . [§] 1408(c)(4)(C)." *Id.* (citing *In re Marriage of Jacobson*, 207 Cal. Rptr. at 515; *Gowins*, 466 So. 2d at 35; *Seeley*, 690 S.W.2d at 627). The court determined the wife's argument was "consistent with considerations of judicial economy," in at least one respect—"If a member of the military has no objection to having child custody, support[,] and some property issues resolved in a particular forum, it does not serve the interests of judicial economy to permit him to nonetheless insist that division of his military pension be decided in another forum." *Id.*

However, the court also recognized the husband's argument that the court had previously "held a spouse seeking to divide a military pension under []USFSPA must show that a member of the military had more than the minimum contacts with the forum necessary for personal jurisdiction." *Id.* (citing *In re Marriage of Hattis*, 242 Cal. Rptr. at 415). The court stated that the *Hattis* case had "found that the provisions of . . . [§] 1408(c)(4) were 'apparently included in response to concerns about "forum-shopping" spouses who might seek to divide the pension in a state with more favorable laws, but with little contact with the pensioner.'" *Id.* (quoting *In re Marriage of Hattis*, 242 Cal. Rptr. at 413). The court noted that *Hattis* "recognized that, in holding [the] []USFSPA requires the nonmilitary spouse to show more than what is required by a minimum contacts analysis, the result often will be that a court has jurisdiction over all aspects of marriage except disposition of a military pension." *Id.* (citing *In re Marriage of Hattis*, 242 Cal. Rptr. at 413-15). The *Tucker* court stated, "[A] minimum contacts approach will support California jurisdiction over [a service member] for the purposes of determining his liability for child support . . . but that same court cannot adjudicate the division of his military pension, even if California law would apply under a choice of law analysis." *Id.* at 406-07 (quoting *In re Marriage of Hattis*, 242 Cal. Rptr. at 415).

Ultimately, the *Tucker* court determined, "In light of . . . *Hattis*, [it was] not in a position to accept [the wife]'s argument that consent to jurisdiction over one portion of the dissolution proceeding can be interpreted as waiving the additional protection provided to members of the military by [the] []USFSPA." *Id.* at 407. The court stated that "after *Hattis*, the failure to object to California's jurisdiction over all aspects of a divorce cannot be interpreted as an agreement [that] the narrower requirements of [the] []USFSPA have been satisfied or need not be met." *Id.* "Rather, given *Hattis*, a member of the military . . . may both agree California has jurisdiction over nonpension issues and at the same time argue California has no power to divide his or her military pension." *Id.*

### G. Timing of Objection to Jurisdiction over Military Retirement Benefits

A few courts have tried to explain the differing interpretations of the statute arising out of the concepts of implied and express consent. The Kansas Court of Appeals did so by looking at an opinion from another state that held "§ 1408(c)(4) does not require that the service member expressly consent to a trial court's jurisdiction to divide his military retirement" because "[t]he service member's consent can be implied after he has made a general appearance, which waives all personal jurisdiction objections." *Williams*, 367 P.3d at 1274 (citing *White*, 543 So. 2d at 128). The Kansas court observed "[o]ther courts . . . have followed this reasoning includ[ing] the California Court of Appeals; North Carolina Court of Appeals; the Texas Court of Appeals; the Washington Court of Appeals; the Wisconsin Court of Appeals; and the Virginia Court of Appeals." *Id.* (citing *In re Marriage of Jacobson*, 207 Cal. Rptr. at 515; *Judkins*, 441 S.E.2d at 140; *Morris*, 894 S.W.2d at 862; *In re Marriage of Parks*, 737 P.2d at 1318; *Kildea*, 420 N.W.2d at 394; *Lenhart v. Burgett*, No. 0528-94-1, 1995 WL 129140, at *2 (Va. Ct App. Mar. 28, 1995)).

The *Williams* court determined "the terminology 'express consent' and 'implied consent' [was not] useful to our analysis of what constitutes consent under § 1408(c)(4)(C). The use of this terminology in other states' decisions does not really capture the factors the courts are relying on in their analyses." 367 P.3d at 1274. Instead, the court "prefer[red] to focus on a common factual pattern represented in most of the cases." *Id.* The court recognized that "[i]n most cases, the court is hearing supplemental or ancillary proceedings to an earlier divorce proceeding. In these later proceedings[,] the issue of division of military

retirement is being raised for the first time and the service member objects to the division of his or her retirement." *Id.* at 1274-75.

> Courts following the "implied consent" viewpoint hold that if objection is not made to personal jurisdiction in the first instance, the service member consents to jurisdiction for purposes of § 1408(c)(4)(C), notwithstanding that the issue of the division of the military retirement may not have been raised until years later in supplemental or ancillary proceedings.

> Courts following the "express consent" viewpoint take the position that the service member does not consent to jurisdiction for purposes of § 1408(c)(4)(C) unless the service member fails to object when the issue of division of the retirement is first raised. For these courts[,] a failure to object to jurisdiction at a time before the matter of division of retirement is raised does not constitute consent. They allow an objection to be raised to jurisdiction when the issue of division of retirement is first raised, even if earlier in the proceeding the party did not object to jurisdiction. They look to see what response the party makes after the issue of retirement is raised. If the party doesn't object, there is consent. If the party does object, there is no consent.

*Id.* at 1275.

Oklahoma has observed "conflicting interpretations have only arisen under [§] 1408(c)(4)(C) where the military member remained silent regarding the court's authority to divide the military retirement, and only contested that authority later." *Johnson*, 386 P.3d at 1055. States have "'conflicting interpretations . . . regarding the meaning of "consent" under subsection (c)(4)(C) of the [Act].'" *Id.* (alteration by court) (quoting *Davis*, 284 P.3d at 26). "The disagreement stems from *whether implied consent* satisfies the requirements of subsection (c)(4)(C). While some states have rejected the theory of implied consent, others have held that implied consent satisfies the requirements of the [Act] or that the protections of the [Act] may be waived through state procedural rules." *Id.* (alterations by court) (emphasis added by court) (quoting *Davis*, 284 P.3d at 26). "Among those states accepting

the theory of implied consent, there also appears to be disagreement regarding whether the military spouse's participation in the underlying dissolution proceedings provides a continuing basis to exercise jurisdiction with respect to post-dissolution proceedings to divide military retirement pay." *Id.* (quoting *Davis*, 284 P.3d at 26-27). "In *Davis*, the court stated that § 1408(c)(4)(C) *does not require express consent*, and 'a state court may exercise personal jurisdiction' over a military member's retirement when that member 'makes a general appearance *without expressly contesting personal jurisdiction*.'" *Johnson*, 386 P.3d at 1055 (emphases added by court) (quoting *Davis*, 284 P.3d at 27).

The *Johnson* court distinguished its case, in which the "[h]usband promptly and expressly contested personal jurisdiction of the court with regard to his retirement pay" from *Davis*, in which the member did not contest personal jurisdiction until after the member "'had: (1) made a general appearance; (2) personally and through counsel appeared at a court hearing; (3) specifically requested a special master be appointed to address his retirement pay; and (4) sought clarification about the special master's role and payment of the special master's fees,'" and when the member in *Davis* ultimately contested jurisdiction, he did it "'only in communications with the special master.'" *Johnson*, 386 P.3d at 1055 (quoting *Davis*, 284 P.3d at 28). While "[t]he *Davis* [c]ourt concluded that '[b]y making an appearance, requesting affirmative relief from the court[,] and taking these other actions *before raising any personal jurisdiction issue*, [the service member] consented to Arizona's jurisdiction,'" the *Johnson* court noted that in its case, the "[h]usband immediately contested the court's authority and jurisdiction to divide the military retirement, and at all stages of the proceeding [the h]usband renewed his objection to the court's authority in this regard." *Johnson*, 386 P.3d at 1055 (third alteration by court) (emphasis added by court) (quoting *Davis*, 284 P.3d at 28).

The *Johnson* court determined the trial court had erred in finding the husband had consented to the court's jurisdiction to divide his military retirement by previously filing two separate domestic actions. *Id.* The *Johnson* court found, "Although [the h]usband filed . . . two prior domestic actions[9] . . . , [he] never specifically

---

[9] The first action was "for separate maintenance[,] which was dismissed by the trial court, and the second was an action for divorce[,] which resulted in a default divorce decree. However, the second action was ultimately vacated by the trial court as a result of insufficient service of process on [the w]ife." *Johnson*, 386

consented to the district court's jurisdiction with respect to his military retirement." *Id.* at 1055-56. The court explained that the "[h]usband specifically objected in the present action to the court's jurisdiction with regard to his military retirement, and he did so promptly and at all stages of the proceedings." *Id.* at 1056. The court concluded "because the trial court did not have jurisdiction over [the h]usband's military retirement by reason of . . . [the h]usband's consent to the jurisdiction of the court to divide his military retirement, the trial court lacked authority under [§] 1408(c)(4) to do so." *Id.*

Many of the cases that concern this statute have involved prior divorce proceedings in which neither party raised an objection to jurisdiction at the time of the divorce but did so in later proceedings, often when the member actually retired. *Williams* recognized, "Most of the cases deciding jurisdictional issues under the USFSPA" "involve circumstances where some time after the decree of divorce, a party comes back to court with a post-decree motion to modify the decree to make a division of military retirement benefits." 367 P.3d at 1275; *id.* at 1274-75 ("In most cases, the court is hearing supplemental or ancillary proceedings to an earlier divorce proceeding. In these later proceedings[,] the issue of division of military retirement is being raised for the first time and the service member objects to the division of his or her retirement."). The court in *Williams* noted, "A determination of what constitutes consent under such circumstances is fundamentally different than what occurred here." *Id.* at 1275. The *Williams* court found it had jurisdiction over the husband when "the court determined jurisdiction and made the division of the retirement benefits during the initial divorce proceeding" and the husband did not object to the jurisdiction until nineteen years later when his ex-wife "was seeking to enforce the divorce decree's order regarding division of [the husband's] retirement benefits." *Id.*

### H. State Law Related to Waiver and/or Implied Consent

Apart from the differing interpretations of consent for purposes of section 1408, many of the cases turn on states' own precedents on the waiver of personal jurisdiction.

In *Kildea*, the Wisconsin Court of Appeals noted that the husband "admit[ted] that the trial court had personal jurisdiction over him" but argued "that the trial court

---

P.3d at 1052. "After the second action was vacated, [the w]ife filed the . . . petition initiating the divorce proceedings at issue." *Id.*

lacked the 'power' to divide the pension." 420 N.W.2d at 393. The husband "point[ed] to the statutory language that the court must have jurisdiction 'by reason of' his consent. He contend[ed] that the court's jurisdiction over him was 'by reason of' the service of summons, not 'by reason of' his consent." *Id.* "He also argue[d] that he never consented to the court's division of the pension." *Id.* "The trial court found that [the husband] had consented to jurisdiction by his admission of service, his counsel's general appearance, his own general appearance, and his response asking for affirmative relief." *Id.*

On appeal, the court determined the husband "confuse[d] consent to service of a summons with consent to personal jurisdiction. . . . To avoid 'consenting' to the jurisdiction of the court, he must merely object to jurisdiction." *Id.* The court noted that in that state, "if a litigant desires to avail himself of want of jurisdiction of his person he must keep out of court for all purposes except that of objecting to jurisdiction, or, what is the same thing, moving to dismiss on that ground." *Id.* (quoting *Stroup v. Career Acad. of Dental Tech.-Washington, D.C., Inc.*, 156 N.W.2d 358, 360 (Wis. 1968)). The court further explained, "If [the litigant] takes any step consistent with the idea that the court has jurisdiction of his person, such appearance amounts to a general appearance and gives the court jurisdiction for all purposes." *Id.* (quoting *Stroup*, 156 N.W.2d at 360).

The court noted "although service was one of the steps taken to obtain jurisdiction, [the husband] still had the opportunity to object to jurisdiction by responsive pleading or motion." *Id.* It found the husband "made no objection regarding jurisdiction over his person. In fact, he repeatedly concede[d] that personal jurisdiction was present." *Id.* It noted the husband instead relied "on nuances in the statute to build an argument that although personal jurisdiction was *generally* present, the court lacked the *specific* jurisdiction to divide the pension because he did not agree to the division." *Id.* However, the court decided "his argument was not supported by the clear language of the statute." *Id.*

In the case of *In re Marriage of Robinson*, the Illinois Court of Appeals held the husband did not consent to jurisdiction. 33 N.E.3d at 267. The court noted that in that state, "a party does not waive a challenge to a court's personal jurisdiction if the party challenges the court's jurisdiction before filing a motion or other responsive pleading." *Id.* The court stated the husband "undoubtedly challenged the trial court's personal jurisdiction prior to seeking affirmative relief from the court." *Id.* The court found the first action he took in the proceedings in that state was a motion "argu[ing] that the court lacked personal jurisdiction over him. His

subsequent request for a modification to the court's award did not waive his challenge to the trial court's jurisdiction in th[e] case." *Id.* The court determined the husband "did not affirmatively state his consent to jurisdiction, either; he did the precise opposite. Thus, we find that [the husband] did not consent to the Illinois court's jurisdiction by requesting affirmative relief or in any other way." *Id.*

In *Seeley*, a Texas appellate court found that the husband had entered a general appearance by his conduct at trial. 690 S.W.2d at 627. When the case was initially called, the trial court had asked if "the parties were there on [the husband's] special appearance." *Id.* The husband's "attorney responded that although a special appearance was set for hearing, that he had no objection 'to [the wife] proceeding with the proof on the divorce itself and reserve[d] that question on military retirement pay in response to whatever evidence [the wife] puts on.'" *Id.* (second alteration in original). The court noted that the husband's "sole objection was limited to the jurisdiction of the court over the military retirement pay." *Id.* The case proceeded, and during the wife's testimony, she was questioned and she gave answers regarding the husband's military retirement benefits. *Id.* Once the husband "rested, the court allowed argument concerning the issue of [the husband's] special appearance." *Id.*

The appellate court determined the trial "court did not rule on the special appearance until the trial on the merits was concluded. An individual who challenges the court's jurisdiction by filing a special appearance must follow strictly the provisions of [the rule regarding special appearances] to avoid making a general appearance." *Id.* at 627-28. The appellate court found that because the husband "allowed the trial to proceed without first obtaining a ruling" on his special appearance motion, the husband "waived his special appearance." *Id.* at 628. "The Texas rules of civil procedure provide that only *after* a special appearance is overruled may a party thereafter appear generally without waiving his special appearance. This rule, however, applies only where the special appearance is overruled *prior to a trial on the merits*." *Id.* "By invoking the court's jurisdiction on matters other than jurisdiction, and without being compelled to do so by prior ruling of the court, the [husband] made a general appearance. This being the case, [the husband] consented to jurisdiction and satisfied the requirements of [§] 1408(c)(4)." *Id.* (citation omitted).

The Mississippi Supreme Court has held: "[T]he protections of [§] 1408(c)(4), like other limitations on a state's authority to acquire personal jurisdiction, may be

waived. Other states have recognized this waiver doctrine in cases where the defendant entered a general appearance or waived the service of process upon him." *Petters*, 560 So. 2d at 726 (citations omitted) (citing *Gowins*, 466 So. 2d at 36; *In re Marriage of Parks*, 737 P.2d at 1318; *Kildea*, 420 N.W.2d at 293-94). The court held in that case, "As [the husband] has made no appearance in this matter nor done anything else which might be construed as a present waiver, there is no basis upon [which] we might find that within the meaning of [§] 1408(c)(4)(C) . . . he has consented to the jurisdiction of the Mississippi court." *Id.* This holding was in spite of the fact that the court had jurisdiction over the husband in the wife's debt claim against him due to his desertion; the debts occurred in the state as did the husband's behavior that led to the debts. *Id.* at 726-27.

The Louisiana Supreme Court has held "§ 1408(c)(4)(C) does not require express consent. A military spouse can give implied consent to a state court's jurisdiction by making a general appearance, waiving all jurisdictional objections under [the Louisiana Code of Civil Procedure]." *Gowins*, 466 So. 2d at 36.

The Oklahoma Court of Civil Appeals found the trial court had personal jurisdiction over the husband to divide his military retirement benefits because the "[h]usband voluntarily subjected himself to the court's jurisdiction." *Broadbent*, 451 P.3d at 933. It noted, the "[h]usband filed the petition for dissolution of marriage . . . , requesting the court equitably divide the parties' real and personal property." *Id.* The "[h]usband did not object to the court's jurisdiction over his retirement for over a year. Accordingly, . . . [the h]usband consented to the court's jurisdiction by initiating the dissolution proceeding and failing to timely contest the court's jurisdiction." *Id.*

In *Blackson*, 579 S.E.2d at 712, the Virginia Court of Appeals observed: "[The h]usband initially made a special appearance to contest the court's subject matter and personal jurisdiction." "[T]he [trial] court ruled it had both subject matter and personal jurisdiction . . . ." *Id.* The husband continued to maintain his objection to the jurisdictional rulings but also "filed a [counterclaim] invoking the court's jurisdiction to grant a divorce to him on multiple grounds, to award him child custody and child support, to make equitable distribution, and to award him attorney's fees and costs." *Id.* The appellate court determined that "[b]y invoking the jurisdiction of the court to grant him affirmative relief, [the] husband consented to the trial court's jurisdiction and satisfied the consent requirements of . . . § 1408(c)(4)." *Id.*

The *Blackson* court found: "[The h]usband took some actions that were similar to those of [the husband in *Wagner*].  For example, he had his attorney enter a special appearance in the trial court to contest both subject matter jurisdiction over the divorce and personal jurisdiction over him."  *Id.*  "However, unlike Mr. Wagner, [the] husband specifically invoked the court's jurisdiction over him when he voluntarily sought affirmative relief through his [counterclaim].  The [counterclaim] requested, among other things, equitable distribution of the parties' marital estate which includes his retirement benefits."  *Id.*  The court noted that in that state, "the filing of a [counterclaim] constitutes a general appearance and an invocation of the court's jurisdiction."  *Id.* at 713-14 (citing *Ceyte v. Ceyte*, 278 S.E.2d 791, 792 (Va. 1981) (finding any action taken by a litigant that recognizes the case as before the court amounts to a general appearance unless such action's *sole* purpose is to contest jurisdiction)).  The court determined the "[h]usband could not invoke and consent to the jurisdiction of the court for equitable distribution and arbitrarily exclude his retirement pay from the trial court's jurisdiction."  *Id.* at 714.  "Having invoked the jurisdiction of the court to equitably distribute all of the parties' property, [the] husband cannot object to the court's exercise of its authority that he voluntarily invoked."  *Id.*

In *Pender*, the Arkansas Court of Appeals examined whether the husband "'consented' to jurisdiction in the Arkansas . . . court when he filed a motion to set aside the divorce decree based on fraud and improper service of process."  945 S.W.2d at 397.  The court found the wife's argument that the husband "cannot use a 'shotgun approach' in 'consenting' to the divorce but not to the division of the marital pension" to be without merit.  *Id.*  The court observed that "[u]nder the doctrine of divisible divorce, [the wife] could have obtained a dissolution of the marriage without [the husband]'s consent."  *Id.*  The court found the husband did not acquiesce to the court's jurisdiction by filing a motion to set aside the divorce decree.  *Id.*  The court determined the husband's "actions in requesting a hearing on the motion were not inconsistent with his position that there was improper service."  *Id.*

In a Washington Court of Appeals case, *In re Marriage of Peck*, the wife argued the husband had consented to jurisdiction when he filed an answer to her petition for divorce because his answer requested affirmative relief by asking the court to set child support.  920 P.2d at 238.  "The trial court accepted this argument in denying [the husband]'s motion for reconsideration, reasoning that [the husband] had seemed to 'contest jurisdiction on some points and admit jurisdiction on

others.'" *Id.* The husband had "checked various lines for 'admitted' and 'denied' on a form" in his answer. *Id.* He had checked "admitted" in response to the paragraph in the wife's petition alleging child support should be set, then noted on the form's next page that he denied certain provisions "because: 'This court has no jurisdiction over [the husband] because [the husband] has never been physically present in the state . . . . [The husband] does not choose to consent to the jurisdiction of this court either.'" *Id.* The appellate court observed the husband "continued to contest jurisdiction in later pleadings, including a motion to dismiss, a motion to revise the . . . denial of that motion, and an amended answer to the petition." *Id.*

The appellate court recognized, "Consent to jurisdiction may be implied by the service member's general appearance in court . . . ." *Id.* However, the court further observed "even where the member has objected to personal jurisdiction . . . , as [the husband] did, 'he may waive the defense of lack of jurisdiction by seeking affirmative relief, thereby invoking the jurisdiction of the court.'" *Id.* at 238-39 (quoting *In re Marriage of Parks*, 737 P.2d at 1318) (citing *Deal v. Deal*, 496 So. 2d 1175 (La. Ct. App. 1986)). The court ultimately found that in that case, the husband had not "consented to jurisdiction or waived his jurisdictional challenge. By agreeing with [the wife]'s assertion that the parties have children for whom support should be set according to the standard schedule, he did not seek affirmative relief." *Id.* at 239.

The appellate court in *Peck* distinguished the cases the wife cited: "The husband in *Parks* did not contest jurisdiction initially, but prayed for a division of marital property and for resolution of child custody and maintenance issues," and "the husband in *Deal* requested child custody, a reduction in support, and a finding that the military pension was solely his own property." *Id.* (citing *Parks*, 737 P.2d at 1318; *Deal*, 496 So. 2d at 1176). The court held that in those cases, the "husbands were seeking affirmative relief, thereby submitting themselves to the jurisdiction of the court." *Id.* (citing *Livingston v. Livingston*, 719 P.2d 166 (Wash. Ct. App. 1986) (finding party who asks court to enforce visitation seeks affirmative relief)). Whereas the *Peck* court found the husband "merely acknowledged his responsibility to provide for the children, as [the wife] proposed. He did not seek affirmative relief, and therefore did not waive his challenge to the court's jurisdiction. Nor did [the husband] consent to jurisdiction by asking the court to award him attorney's fees." *Id.* Accordingly, the appellate court concluded "the trial court lacked the necessary personal jurisdiction over [the husband] to divide his [military] pension under the USFSPA." *Id.*

In the case of *In re Marriage of Akins*, the husband continually objected to the trial court's jurisdiction over his military pension. 932 P.2d at 868. The court found: "[T]he question of consent under § 1408(c)(4) is not whether the military member simply waived his right to contest personal jurisdiction under state procedural rules. Rather, the statutory language requires some form of affirmative conduct demonstrating express or implied consent to general in-personam jurisdiction." *Id.* at 867-68.

In *Judkins*, the North Carolina Court of Appeals found the trial court had personal jurisdiction of the husband under § 1408(c)(4). 441 S.E.2d at 140. In that case, the wife filed an "action seeking a divorce . . . , child custody, child support, alimony, and equitable distribution," and the husband "filed an answer containing counterclaims for child custody and support and equitable distribution." *Id.* The court determined the husband "made a general appearance thereby consenting to personal jurisdiction by seeking affirmative relief in his answer *without contesting personal jurisdiction*." *Id.* (emphasis added).

In the present case, the only case the family court cited in its order denying Husband's motion to dismiss for lack of jurisdiction was a United States Court of Federal Claims case, *Baka v. United States*, 74 Fed. Cl. 692 (2006). The facts and procedural history in that case are different from those in the present case. In that case, the husband retired from the military in 1977, thus becoming eligible for retirement pay. *Id.* at 693. The husband and wife divorced in 1986 in California. *Id.* The California court incorporated into the final judgment a stipulation by both parties giving the wife part of the husband's retirement pay. *Id.* Shortly thereafter, the wife applied for and began receiving her share of the retirement pay. *Id.* Twenty years later, the husband filed a complaint in the federal claims court asserting "the wrongful and unlawful taking of a portion of" his military retired pay. *Id.* The federal claims court determined, "Although [the husband] claims that he is a resident of Pennsylvania and that the California court lacked personal jurisdiction over him, a person 'consents' to the personal jurisdiction of a court by participating in a proceeding." *Id.* at 698.

We also must look at South Carolina case law regarding what is required to maintain an objection to the court's jurisdiction over a party. The Fourth Circuit Court of Appeals has observed, "The adoption of the present South Carolina Rules of Civil Procedure abolished the special appearance, but retained the voluntary appearance." *Maybin v. Northside Corr. Ctr.*, 891 F.2d 72, 74 (4th Cir. 1989). "Therefore, a general appearance is the only appearance a party can make under

existing procedure." *Id.* (quoting *Dunbar*, 295 S.C. at 495, 369 S.E.2d at 151). "At the same time, [Rule] 12(b)(2)[, SCRCP,] states that the defense of 'lack of jurisdiction over the person' may be made by motion or by responsive pleading." *Id.* The court stated, "Therein lies a paradox in the South Carolina rules. If a defendant can only make a general appearance, how can he assert his objection to personal jurisdiction under Rule 12(b) without simultaneously waiving his objection under Rule 4(d)[, SCRCP]?" *Id.*

The court found, "Rules of civil procedure must be considered in relation to one another and construed together. It is clear from Rule 12(b) that a party should be able to raise an objection to personal jurisdiction without simultaneously waiving it under Rule 4(d)." *Id.* (citation omitted). The court observed that this court in *Dunbar v. Vandermore*, had "attempt[ed] to solve the riddle caused by the elimination of the term 'special appearance' from the language of the present rule." *Id.* (citing *Dunbar*, 295 S.C. at 495-97, 369 S.E.2d at 151-52). The court stated that the defendant in *Dunbar* "obtained an extension of time from the plaintiff to file responsive pleadings" and later "moved for an order dismissing the suit on the grounds that the state court lacked personal jurisdiction over him and subject matter jurisdiction over the action, and that there was insufficient process and service of process." *Id.* (citing *Dunbar*, 295 S.C. at 494, 369 S.E.2d at 151). The court explained that this court "noted that 'it is possible under the Rules for a party to waive the right to question jurisdiction over the person. Rule 12(h)(1)[, SCRCP,] expressly provides that this right is waived under two circumstances.'" *Id.* (quoting *Dunbar*, 295 S.C. at 496, 369 S.E.2d at 152). The *Dunbar* "court held that the defendant had not waived his right to assert jurisdictional defenses merely by requesting an extension of time." *Id.* (citing *Dunbar*, 295 S.C. at 497, 369 S.E.2d at 152-53).

The Fourth Circuit then contrasted *Dunbar* with another case from this court, *Smalls v. Weed*, 291 S.C. 258, 353 S.E.2d 154 (Ct. App. 1987). *Maybin*, 891 F.2d at 74. In *Smalls*, this court held that when a defendant had "appeared and asserted two claims which went to the merits, in addition to his jurisdictional objection, the defendant had waived personal jurisdiction." *Id.* (citing *Smalls*, 291 S.C. at 260-61, 353 S.E.2d at 155-56). The Fourth Circuit deduced that "although the term 'special appearance' has been eliminated, the procedure described by that term has not entirely been discarded." *Id.* "*Smalls* and *Dunbar* teach that if a defendant appears before the court to contest jurisdiction over his person, and does not simultaneously address the merits, he has not waived his objection under Rule 4(d)." *Id.* at 74-75.

In *Maybin*, the plaintiff "allege[d] that the defendants waived their right to assert a lack of personal jurisdiction because they simultaneously included arguments regarding the timeliness of plaintiff's action, the eleventh amendment, and sovereign immunity" but the Fourth Circuit noted that those issues were all jurisdictional issues. *Id.* at 75. The Fourth Circuit determined "[t]he defendants' objection to personal jurisdiction was not accompanied by any plea to the merits which implicitly acknowledged jurisdiction of the court. A defendant cannot be said to have waived personal jurisdiction merely because he alerts the court to other types of jurisdictional defects." *Id.*

"[J]urisdiction refers to the authority of a court over a particular person (personal jurisdiction) or the authority of a court to entertain a particular action (subject matter jurisdiction), but the concept does not refer to the validity of the claim on which an action against a person is based." *Boan v. Jacobs*, 296 S.C. 419, 421, 373 S.E.2d 697, 698 (Ct. App. 1988).

> A defense of lack of jurisdiction over the person . . . is waived (A) if omitted from a motion in the circumstances described in subdivision (g)[10] or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted . . . to be made as a matter of course.

Rule 12(h)(1), SCRCP.

In a South Carolina federal district court case, the court examined whether the defendant had "submitted itself to the jurisdiction of the [c]ourt and forfeited any objection to personal jurisdiction" "by seeking relief under" the federal rule that provides relief from judgment for fraud, misrepresentation, or misconduct by an opposing party. *Revman Int'l, Inc. v. SEL Mfg. Co.*, No. 7:17-CV-01944-BHH,

---

[10] Subdivision (g) provides: "A party who makes a motion under this rule may join with it any other motions herein provided for and then available to him. If a party makes a motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated." Rule 12(g), SCRCP.

2019 WL 10893956, at *8 (D.S.C. Mar. 26, 2019).  The court noted the defendant's "filings purport[ed] to reserve the issue of personal jurisdiction for an appropriate motion to dismiss."  *Id.*  "The [c]ourt agree[d] that, before [the defendant] filed its motion to vacate the default judgment, [it] had not waived its personal jurisdiction defense through litigation activity."  *Id.*  The court observed that nonetheless, "a court obtains personal jurisdiction over a defendant if the actions of the defendant during litigation amount to a legal submission to the jurisdiction of the court."  *Id.* (citing *Ins. Corp. of Ireland*, 456 U.S. at 704).  The court stated that when "a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter."  *Id.* (citing *Adam v. Saenger*, 303 U.S. 59 (1938)).  The court determined the defendant "submitted itself to the jurisdiction of the [c]ourt" when it "moved for relief on jurisdictional grounds, but it also sought relief on the grounds of fraud or misconduct."  *Id.*

The court held that "[w]hile the practice of making special and general appearances has long since been abandoned in federal courts, [the defendant's] conduct in seeking relief under [the federal rule for relief from judgment] is the type of conduct which would have constituted a general appearance under prior law."  *Id.*  The court determined that in that case, the defendant's "motion [for relief from judgment] was a request for affirmative relief from the [c]ourt on a non-jurisdictional ground.  [The defendant] did not appear solely to conte[s]t jurisdiction."  *Id.*  The court held the defendant had "submitted itself to the jurisdiction of the [c]ourt" by requesting relief under the federal rule.  *Id.*

## I. Defense Finance and Accounting Service Publication and the Family Court's Order

In the present case, in the family court's order denying Husband's motion to dismiss for lack of jurisdiction, it quoted language from a Defense Finance and Accounting Service (DFAS) publication entitled "Guidance on Dividing Military Retired Pay" (the DFAS Document).  DFAS is "the agency charged with administering and distributing military retired pay."  *Snodgrass v. Snodgrass*, 297 S.W.3d 878, 882 (Ky. Ct. App. 2009).  "Additionally, it is responsible for directing eligible payments to spouses pursuant to the USFSPA.  Accordingly, DFAS procedures are particularly relevant when interpreting award language intended to result in direct payments to spouses."  *Crayk v. Glover*, 176 P.3d 645, 647 n.2 (Wyo. 2008).

The family court order quoted Section III(B)(2), *Requirements for Enforceablity Under USFSPA*, of the DFAS Document[11] as stating, "[T]he member indicates his or her consent to the court's jurisdiction by taking some affirmative action with regard to the legal proceeding, such as filing <u>any pleading</u> in the case." (emphasis added by family court) (alteration by family court). A few versions of the DFAS Document appear online[12] and the heading of the DFAS Document contains a website address[13] leading to DFAS's website. However, no version of the DFAS

---

[11] At the hearing on Husband's motion to dismiss, Wife's attorney referenced a document she had presented—which appears to be the DFAS Document—and stated:

> [U]nder the [USFSPA], and it's actually the attorney's instruction, that it says one way for a member to consent to the jurisdiction of the court: "The member indicates his or her consent to the court's jurisdiction by taking some affirmative action." The example that they give is, "such as, filing any responsive pleading in the case."

The document does not appear in the record on appeal.

[12] The version that appears to be the one cited by the family court is Garnishment Operations Directorate, Defense Finance and Accounting Service, Cleveland Center, *Guidance on Dividing Military Retired Pay*, available at http://www.increa.com/articles/division-military-retirement-dual-coverture/AttorneyGuidance-03-07-2014.pdf (rev. Jan. 29, 2012) (last visited Apr. 29, 2022). This version states at the top: "Disclaimer- this publication is intended to provide guidance only, and is not legally binding. Legal authority may be found at Title 10, United States Code, Section 1408, and the DoD Financial Management Regulation, Volume 7B, Chapter 29, available at http://comptroller.defense.gov/Portals/45/documents/fmr/current/07b/Volume_07b.pdf." Other versions also appear online. *See, e.g.*, from a committee of the North Carolina Bar Association: https://ms.ng.mil/resources/specialstaff/sja/Documents/Divorce/Dividing_Military_Retired_Pay.pdf (rev. Feb. 1, 2005) (last visited Apr. 29, 2022); from the Augusta Bar Association of Augusta, Georgia: https://augustabar.org/Resources/846.pdf (rev. Jan. 4, 2010) (last visited Apr. 29, 2022).

[13] https://www.dfas.mil/garnishment/retiredmilitary/html

Document currently appears on that website.[14]  Instead, the website states on the subject of the USFSPA, under the heading of "**State Jurisdiction**":

> [T]o enforce orders dividing retired pay as property, the state court must have had jurisdiction over the member by reason of
>
> > 1) the member's residence in the territorial jurisdiction of the court (other than because of military assignment),
> > 2) the member's domicile in the territorial jurisdiction of the court, or
> > 3) the member's consent to the jurisdiction of the court.
> > 4) the member indicates his or her consent to the court's jurisdiction by taking some affirmative action in the legal proceeding.

Defense Finance and Accounting Service, https://www.dfas.mil/Garnishment/usfspa/legal/ (last updated Mar. 19, 2019).

In the versions of the DFAS Document found online, immediately following the language quoted by the family court, a footnote provides a citation to *Baka*, 74 Fed. Cl. at 698, and also DoDFMR, vol. 7B, subparagraph 290604.A.3.  DFAS Document n.15.  The subparagraph[15] of the Department of Defense Financial

---

[14]  An "info-letter" prepared for the North Carolina State Bar's Standing Committee on Legal Assistance for Military Personnel states "the information paper, 'Guidance on Dividing Military Retired Pay' (3/17/14 version) that was originally published by the Defense Finance and Accounting Service . . . was removed from publication in 2015."  Mark E. Sullivan, *SILENT PARTNER: Guidance for Lawyers: Military Pension Division*, https://www.nclamp.gov/media/425645/s-mp-guidance.pdf (last visited Apr. 29, 2022).

[15] The numbering of the subparagraph cited by the DFAS Document has changed from 290604.A.3. to 6.4.1.3 in the current version.  *See* DoD 7000.14-R, Department of Defense Financial Management Regulation, Volume 7B, Chapter 29: Former Spouse Payments from Retired Pay, https://comptroller.defense.gov/Portals/45/documents/fmr/archive/07barch/07b_29_Sep15.pdf (rev. Sept. 2015).

Management Regulation referenced in the footnote, to which the family court also cites, provides:

> In the case of a retired pay award, the designated agent must be able to determine from the court order that the court dividing military retired pay had jurisdiction over the member in one of the following ways: . . . The member consented to the jurisdiction of the court. If the court order does not "explicitly" state that the member consented to the court's jurisdiction, the designated agent will regard the member's participation in the legal proceeding, other than to contest the court's jurisdiction, as evidence of the member's consent to the court's jurisdiction in the proceeding dividing the member's military retired pay.

DoD 7000.14-R, Department of Defense Financial Management Regulation, Volume 7B, Chapter 29: Former Spouse Payments from Retired Pay, https://comptroller.defense.gov/Portals/45/documents/fmr/current/07b/07b_29.pdf (rev. June 2021).

The *Baka* court noted, "The DFAS website specifically explains th[e] principle [that a person consents to the personal jurisdiction of a court by participating in a proceeding] to service members in a 'Uniformed Services Former Spouses' Protection Act Bulletin Fact Sheet,'" which states, "[T]o enforce orders dividing retired pay as property, *the state court must have had jurisdiction over the member by reason of . . . (3) the member's consent to the jurisdiction of the court, as indicated by the member's taking some affirmative action in the legal proceeding.*" 74 Fed. Cl. at 698-99 (quoting DFAS website, *available at* http://www.dod.mil/dfas/militarypay/garnishment/fsfact.html (last visited November 28, 2006)) (emphases added by court) (last alteration by court).

The matters involved in this case at the family court, apart from the military retirement benefits, included divorce, custody, alimony, equitable apportionment, and attorney's fees. The couple last resided together in North Carolina but Wife and the children have resided in South Carolina since 2008. Husband conceded

that because he was served while in South Carolina, the family court had jurisdiction over him for all matters except for the military retirement.[16]

## J. Application of Law to this Case

Here, Husband never explicitly consented to the family court's jurisdiction over his military retirement benefits. Therefore, the decision in this case turns on whether South Carolina would follow the reasoning that consent for purposes of section 1408(c)(4) must be specifically to jurisdiction over military retirement benefits rather than to the jurisdiction of the court in general. If the statute means consent to jurisdiction in general, then Husband did so by conceding the family court had jurisdiction over him for the matters that did not relate to his military retirement benefits. However, Husband was clear at all times that he objected to jurisdiction over his military benefits. South Carolina has not specified which definition of consent it follows in the context of this statute, and as we discussed above, other states are divided.

We recognize nothing in the record here indicates that Wife engaged in forum shopping to find a jurisdiction more beneficial to her. Wife and the children live in South Carolina and that is where she sought a divorce and custody. However, we note Husband also did not change his domicile or residence in an attempt to avoid jurisdiction; he continued living in North Carolina in the same house he, Wife, and their children had lived in together.

Although South Carolina case law does not necessarily provide a clear direction we might follow, we agree with Husband the consent required by section 1408 is to

---

[16] "The family court has exclusive jurisdiction to hear and determine actions for divorce. Before the family court can exercise subject matter jurisdiction over a marriage and grant a divorce, the plaintiff or defendant must have been a domiciliary of South Carolina." *Roesler v. Roesler*, 396 S.C. 100, 106, 719 S.E.2d 275, 279 (Ct. App. 2011) (citation omitted) (citing S.C. Code Ann. § 20-3-30 (Supp. 2010)); *see also* Roy T. Stuckey, *Marital Litigation in South Carolina* § 1.C. (5th ed. 2020) ("In rem jurisdiction refers to the court's power over the subject of the litigation, for example, the marriage . . . . The family court acquires jurisdiction over the marriage, and the power to grant a divorce, when one or both parties meet the statutory requirements to become residents of South Carolina.").

the court's jurisdiction over the military retirement benefits specifically.[17]  While we recognize that many states have found a member only has to consent to the court's jurisdiction in general (and even this can be inferred by the member not objecting to jurisdiction), we find the reasoning explained by the *Wagner* court more persuasive: "While the reference to jurisdiction in § 1408(c)(4)(C) is unqualified, § 1408(c)(4)(C) contains a reference to § 1408(c)(1)'s specific focus on the retirement pay."  768 A.2d at 1118.  "Reading the language of § 1408(c)(4)(C) in context and consistently with the Act's scope and object, we believe that Congress intended for the consent requirement in § 1408(c)(4)(C) to relate, like the rest of the Act, specifically to a military member's pension."  *Id.*  "The cardinal rule of statutory construction is for the [c]ourt to ascertain and effectuate the intent of the Legislature."  *Gilfillin v. Gilfillin*, 344 S.C. 407, 413, 544 S.E.2d 829, 831 (2001).  "If a statute's language is plain, unambiguous, and conveys a clear meaning, then the rules of statutory interpretation are not needed and a court has no right to impose another meaning."  *Strickland v. Strickland*, 375 S.C. 76, 88, 650 S.E.2d 465, 472 (2007).  "The words must be given their plain and ordinary meaning without resorting to subtle or forced construction which limit or expand the statute's operation."  *Id.* at 88-89, 650 S.E.2d at 472.

Husband objected to the court's jurisdiction over the retirement benefits at his earliest opportunity and before he took any further action, such as filing his answer and counterclaim.  He reasserted his objection at every stage of the proceeding, including in his answer and counterclaim.  Therefore, we find he did not explicitly consent to have his military retirements benefits decided in South Carolina.

---

[17] Husband asserts the family court used the long-arm statute to determine it had jurisdiction over him in order to divide his military retirement benefits.  *See* S.C. Code Ann. § 36-2-803(A) (Supp. 2021) (providing South Carolina's long-arm statute and setting forth the conditions in which it applies); *id.* (authorizing South Carolina courts to exercise personal jurisdiction over nonresidents based on acts in the State of South Carolina by those nonresidents including conducting business, entering into a contract, committing a tort, or "having an interest in, using, or possessing real property in this [s]tate").  However, the family court did not use the long-arm statute; it used the provision of section 1408(c)(4)(C), which requires consent, and found Husband consented.  Husband and the family court simply disagreed over what section 1408(c)(4)(C) requires for consent.

Accordingly, the family court's decision to divide his military retirement benefits is reversed.[18]

**CONCLUSION**

Accordingly, the family court erred in not first deciding Husband's motion to dismiss for lack of jurisdiction and not granting him a continuance so that motion could be decided first. Additionally, the family court erred in finding he consented to the court's jurisdiction to divide his military retirement benefits. Therefore, the family court's decision is

**REVERSED.**

**GEATHERS and MCDONALD, JJ., concur.**

---

[18] We reverse only as to the family court's division of the military retirement benefits. Husband conceded the family court had jurisdiction over all other matters before it including child custody, child support, and equitable division of property other than the military retirement benefits, and he does not appeal any of those determinations.